■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSHUA ACOSTA, Appellant.—Judgment, Supreme Court, New York County (Franklin Weissberg, J.), rendered November 9, 1988, convicting defendant, after jury trial, of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree, and sentencing him, as a predicate felon, to concurrent indeterminate terms of 10 to 20 years imprisonment, unanimously modified, as a matter of discretion in the interest of justice, to the extent that the concurrent, indeterminate sentences shall be reduced to 5 to 10 years, and otherwise affirmed.

Defendant's conviction arises out of a "buy and bust" police operation conducted by a Special Anti-Crack Unit (SACU) team operating out of the 23rd police precinct, on November 2, 1987. Detective Alfred Nieves testified that at 3:50 P.M. defendant sold him two vials of crack cocaine for $20 in prerecorded buy money on the corner of 9th Street and Avenue D in Manhattan. Nieves radioed his backup team about what had transpired, and the defendant was then arrested by Officer Harry Ortiz, who testified that he recovered from the defendant's pockets 21 vials of crack, and $175, including four prerecorded $5 bills used by Nieves to purchase the crack.

Defendant claimed that he was framed by the police, and in accordance with this theory testified that his arrest in the instant case took place only hours after he had gone to the

23rd precinct to recover money, a radio and a beeper seized from him in connection with a previous arrest by a different SACU team on March 25, 1987, which had resulted in an acquittal. Defendant testified that Detective Louis Torrellas, the arresting officer in the earlier case, questioned him about the property he was trying to recover, and then cursed at him. Fearing that he might be subjected to violence, the defendant testified that he left the precinct without his property, only to be arrested for no reason by the SACU team of which Detectives Nieves and Officer Ortiz were members.

On appeal the defendant argues, inter alia, that he was denied his rights to a fair trial when the court allowed evidence of the underlying facts of his March 25th arrest, because those facts demonstrated his propensity to sell drugs in violation of the principles set forth in *People v Molineux* (168 NY 264) and should additionally have been precluded under the doctrine of collateral estoppel, and that admission of his postarrest statement to Detective Torrellas about the March 25th incident, without the prosecution's having first served a CPL 710.30 notice was error. Defendant also urges that the prosecutor made prejudicial arguments during summation, and that his sentence was excessive. We address these arguments seriatim.

Defense counsel, in his opening statement, revealed to the jury that the defendant had been arrested for the sale of crack by Detective Torrellas and his SACU team on March 25, 1987, and that the defendant had been found not guilty of those charges. As previously noted, it was defendant's theory that he was framed on the instant charges in apparent retaliation for his having obtained an acquittal on the earlier case wherein Detective Torrellas, a member of a different SACU team operating out of the 23rd precinct, had arrested the defendant for selling crack. To support that theory, defense counsel attempted to elicit, on cross examination of Ortiz, the substance of any conversations between Ortiz and Torrellas on November 2, 1987. Ortiz testified that sometime after 5:30 P.M. Torrellas saw the defendant under arrest in the station house, and told Ortiz that he had arrested the defendant before, but that defendant had been acquitted on that case. Similarly, in cross examining Nieves, defense counsel brought out that Torrellas had told Nieves "that he was acquitted on the [March] case and that they had recovered some drugs off him, some money, and they had lost the case." On redirect by the People, Nieves testified, without objection, that the previous

case was also a "buy and bust", and that a "stash" and "buy-money" were recovered.

On rebuttal, Detective Torrellas testified, without objection from the defendant, as follows:

"Q: And did you arrest Joshua Acosta on that day [March 25, 1987]?

"A: Yes I did.

"Q: And briefly, would you describe the circumstances that led up to his arrest.

"A: He was arrested for a buy and bust; he sold drugs to an undercover. I was on the scene, I observed it and when I approached, he ran. When I apprehended, he dropped a brown paper bag with 123 vials inside, and when I searched him, he had some buy-money on him.

"Q: You saw him drop that paper bag?

"A: Yes I did.

"Q: And that buy-money was on his person?

"A: Yes it was."

Detective Torrellas also testified that he had the following conversation with the defendant in the station house after defendant's arrest on November 2, 1987: "I looked at him and I said to him, 'Joshua, what happened? It's only a couple of weeks; why are you back here?' He shrugged his shoulders and I said to him, 'You have a couple of good friends that would come into court and lie for him,' and he said, 'A man has to do what he has to do.' At that point, I extended my hand and said, 'Good luck on your next case.'"

With respect to Detective Torrellas's rebuttal testimony that defendant sold and possessed crack on March 25, 1987, the parties differ as to whether the issue raised thereby was preserved by timely objection. At a pretrial conference, defense counsel requested an *in limine* ruling that if defendant testified as to his acquittal on the earlier charge, "that the nature of the crime for which he was arrested not be the subject of inquiry by the district attorney." The court ruled that "if you're going to put in issue what occurred on that date, then certainly the People should be free to go into all the facts and circumstances of that particular incident." Defense counsel then clarified his request for a ruling to determine whether the underlying offense of the earlier arrest could be brought out if defendant testified as to the alleged altercation with Detective Torrellas on November 2, 1987, several hours prior to his arrest in the matter then on trial.

The court responded: "Yes. It seems to me if you're going to develop the facts and circumstances of that issue, then you're free to do that but the People are free to develop whatever would normally come out of that." Defense counsel did not object or argue the point, but merely requested time to advise the defendant of the ramifications of his taking the stand to assert that particular defense. Nor did defense counsel object when Detective Torrellas testified on rebuttal as to his version of the March 25, 1987 arrest. Accordingly, defendant has waived review of this issue on appeal (CPL 470.05 [2]; *People v Fleming,* 70 NY2d 947; *People v Tinning,* 142 AD2d 402, 406, *lv denied* 73 NY2d 1022).

Were we to reach the issue in the interest of justice, we would find no error in the introduction of Detective Torrellas's testimony under the circumstances presented herein, although the question is both close and troublesome. It is well settled that the law prohibits the introduction of evidence of crimes not charged in an indictment for the sole purpose of convincing the jury that the accused has such criminal propensities that his guilt of the crime at issue is likely *(People v Molineux,* 168 NY 264, 313-314, *supra; People v Ventimiglia,* 52 NY2d 350, 359; *People v Alvino,* 71 NY2d 233, 241). Nevertheless, evidence of uncharged crimes may be introduced in rebuttal to overcome "some affirmative fact which defendant has tried to prove" *(People v Alvino,* 71 NY2d, *supra,* at 248).

The defendant introduced evidence of his prior acquittal as the motive for the alleged police frameup in the instant case, and implicit in that acquittal is the inference that the defendant did not commit the earlier crime. The People were not required to allow that inference—that another SACU team operating out of the same police precinct had previously tried unsuccessfully to frame the defendant—to go unanswered. The defendant first brought out the March arrest and the nature of the earlier charges, and testified on direct examination that he had been working at the time the police claimed he was selling drugs, thus injecting his claimed innocence of the earlier charges into the case then on trial. In that context we do not perceive the introduction of Detective Torrellas's rebuttal testimony as improper or as depriving the defendant of a fair trial. The defendant's claim that the introduction of the rebuttal testimony concerning the March arrest was precluded under the doctrine of collateral estoppel, was never raised below, and so is not preserved for review *(People v Bosilkofski,* 134 AD2d 869).

With respect to the introduction, on rebuttal, of Detective

Torrellas's testimony regarding defendant's statement, " 'A man has to do what he has to do' ", we find no violation of CPL 710.30 (1) (a), which requires that prior notice be given to the defendant whenever the People intend to offer at trial evidence of a statement "made by a defendant to a public servant, which statement if involuntarily made would render the evidence thereof suppressible upon motion pursuant to subdivision three of section 710.20". Where defendant has opened the door regarding a statement that the People did not intend to offer at trial, that statement does not fall within the purview of CPL 710.30, and may be admitted without prior notice (*People v Goodson*, 57 NY2d 828, 830; *People v Purdie*, 165 AD2d 720, *lv denied* 76 NY2d 990; *People v Connor*, 157 AD2d 739, *lv denied* 76 NY2d 732). This statement did not become relevant until defense counsel announced at the beginning of trial the defense theory based upon the March 1987 case and an alleged conversation between defendant and Detective Torrellas on November 2, 1987. The prosecutor then inquired into that matter for the first time and discovered that Detective Torrellas had spoken with defendant that day, but, contrary to the defendant's testimony, the conversation had taken place after, rather than before, defendant's arrest. The prosecutor then advised the court and defense counsel of the statement. Accordingly, the People had good cause for not having provided timely notice of the statement (CPL 710.30 [2]).

We agree with defendant that the prosecutor improperly argued on summation that the jury should "think about the case that the defendant was acquitted on. Think about how similar that case was to this case. Both cases were buy and bust. On the March 25th case, there was buy-money recovered on the defendant, and in this case, there was buy-money recovered on the defendant." This argument, and similar comments on summation pointing out the similarities between the case that resulted in an acquittal, and the case on trial, constituted "propensity" arguments prohibited by *People v Molineux (supra)* and numerous cases confirming the principles stated therein. However, defense counsel registered no objection to these clearly objectionable comments, at a time when the court could have stricken them and instructed the jury as to the limited purpose for the introduction of the rebuttal evidence concerning the March 1987 arrest. Defendant may not withhold objection to improper arguments, hope for an acquittal, and then raise the improper arguments as error if the jury convicts. Review of such an obviously "invited

error" in the interest of justice is not warranted *(People v Waytes,* 107 AD2d 774, 775).

Although we find no ground to reverse the defendant's conviction, we find the concurrent sentences of 10 to 20 years on the sale and possession counts to be unduly harsh. (CPL 470.15 [2] [c].) In *People v Acosta* (157 AD2d 485, *lv denied* 75 NY2d 916), the defendant was sentenced to 12½ to 25 years for criminal sale of a controlled substance in the third degree. We found that sentence for a single $10 drug sale excessive, and reduced it to 5 to 10 years. In *People v Depass* (168 AD2d 230, *lv denied* 77 NY2d 876), we reduced to a term of 5 to 10 years, a sentence of 8½ to 17 years for a single $20 sale of crack. In *People v Cowell* (170 AD2d 343, *lv denied* 77 NY2d 993), we reduced to a term of 5 to 10 years, a sentence of 8 to 16 years for selling two vials of crack, even though the defendant had a record of 22 convictions, including three felonies. Accordingly, in the exercise of our discretion in the interest of justice, defendant's sentence is modified to concurrent indeterminate terms of from 5 to 10 years, and the judgment is otherwise affirmed. We have considered the defendant's other arguments and find them to be without merit. Concur—Carro, J. P., Rosenberger, Wallach, Ross and Asch, JJ.