*502 OPINION OF THE COURT
James A. Yates, J.
Anthony Moore is charged with one count of criminal possession of a weapon in the second degree and one count of criminal possession of a weapon in the third degree.
After a Huntley/Dunaway hearing, five statements allegedly made by Mr. Moore were found to have been properly acquired. However, prior to the start of the hearing, the Assistant District Attorney assigned to this case informed the court and defense counsel that he had recently become aware of the existence of an alleged sixth statement while preparing for the hearing. The statement was made to a police officer at the precinct where the defendant had been held prior to arraignment.
Since the Assistant had only become aware of the existence of this alleged statement on the day before the hearing, the People had not provided notice pursuant to CPL 710.30. The Assistant District Attorney advised the court and defense counsel that while the People did not intend to use the statement as part of their direct case, they reserved the right to use it for purposes of impeachment and as part of their case on rebuttal. Defense counsel opposed the potential use of the statement.
Initially, the court notes that the People do not claim a "good cause” justification for their failure to provide notice of the sixth statement. In the absence of good cause, the court is bound by section 710.30 (3) which states: "In the absence of service of notice upon a defendant as prescribed in this section, no evidence of a kind specified in subdivision one may be received against him upon trial unless he has, despite the lack of notice, moved to suppress such evidence and such motion has been denied and the evidence thereby rendered admissible as prescribed in subdivision two of section 710.70.” (Emphasis added.)
Accordingly, the People are barred from using this sixth statement against the defendant at trial. (People v O'Doherty, 70 NY2d 479 [1987].) The People nevertheless contend that they may use the sixth statement to impeach the defendant or as part of their case on rebuttal. This is so, they maintain, because the phrase "upon trial” contained within section 710.30 (3) refers solely to the People’s direct case.
The People’s argument flies in the face of the statutory definition of the term "trial” contained within subdivision (11) *503 of CPL 1.20, which specifically provides that "[a] jury trial commences with the selection of the jury and includes all further proceedings through the rendition of a verdict. A non-jury trial commences with the first opening address, if there be any, and, if not, when the first witness is sworn, and includes all further proceedings through the rendition of a verdict.”[1]
If the Legislature merely had intended to limit preclusion under section 710.30 (3) to the People’s direct case, it would not have expressly prohibited the receipt of evidence against a defendant "upon trial”, when the term "trial” is defined in plain and unambiguous terms in section 1.20 (11).
The People argue, notwithstanding the unequivocal and straightforward definition in the statute, that the result is unintended by the Legislature. However, it is a fundamental tenet of statutory construction that a court may not look to underlying legislative intent when the words of the statute are clear. (McKinney’s Cons Laws of NY, Book 1, Statutes § 76; Matter of Schmidt v Roberts, 74 NY2d 513, 520-522 [1989]; People v Floyd J, 61 NY2d 895 [1984]; see also, People v Graham, 55 NY2d 144, 151-152 [1982].) In this case, the plain meaning of the statute is irrefutable. Moreover, the court does not agree that the Legislature intended something other than that which is explicitly provided.
The Legislature is not unaware of the distinction between the People’s direct case and the full proceeding which it designates "trial”. For example, in 1979 the Legislature drew just such a distinction in subdivision (4) of CPL 240.10, which was enacted nine years after the adoption of section 710.30.[2] Section 240.10 (4) expressly limits the definition of the phrase "at the trial”, for purposes of the discovery article only, to mean "part of the people’s or the defendant’s direct case.” (Emphasis added.)
By way of contrast, there is no indication in article 710 that the phrase "upon trial” contained within section 710.30 (3) is to be defined in a manner other than that which is specified in section 1.20 (11). Thus, it is logically inescapable that preclu *504 sion pursuant to section 710.30 (3) is not limited to the People’s direct case.
That the Legislature intended preclusion pursuant to section 710.30 (3) to encompass statements which the People intend to use only for purposes of impeachment and rebuttal is further illustrated by the fact that it provided a specific definition of the term "evidence” for use in article 710 which is broader than the definition of the phrase "evidence in chief’ contained within subdivision (40) of CPL 1.20.
CPL 1.20 (40) defines "evidence in chief’ as "evidence, received at a trial or other criminal proceeding in which a defendant’s guilt or innocence of an offense is in issue, which may by considered as a part of the quantum of substantive proof establishing or tending to establish the commission of such offense or an element thereof or the defendant’s connection therewith.” In comparison, the Legislature provided a specific definition of the term "evidence” for use in article 710, defining that term as "any tangible property or potential testimony which may be offered in evidence in a criminal action.” (CPL 710.10 [2].)
Were the People to offer the statement at issue in this case as an admission by the defendant, it would be offered as "evidence in chief’ as defined in section 1.20 (40). However, they do not seek to use the statement as "substantive proof’ of the defendant’s guilt. Rather, they seek to preserve the statement for purposes of impeachment and rebuttal. Here again, the proposed use of the statement runs afoul of the clear language of section 710.30. which prohibits the use of "evidence of a statement made by a defendant to a public servant”, without limitation to use by the People of the statement as "evidence in chief.”
If the Legislature merely intended to preclude substantive use of the statement, as argued by the People, it surely would have used the phrase "evidence in chief’ in section 710.30. By providing the definition of "evidence” in article 710, which is plainly and purposefully broader than the definition of "evidence in chief’ in section 1.20 (40), the Legislature anticipated and explicitly rejected the argument now advanced by the People.
It is therefore apparent that in plain, unambiguous and consistent language, the Legislature precluded use of statements, in the absence of notice, not just as "evidence in chief’, i.e., as "substantive proof * * * tending to establish the com *505 mission of * * * [the] offense” (CPL 1.20 [40]), but also as "evidence” offered to impeach the defendant.
Moreover, the legislative history of section 710.30 amply demonstrates an intention on the part of the Legislature to require notice of statements which the People intend to use for purposes of impeachment or as part of their case on rebuttal. The predecessor to section 710.30 was section 813-f of the Code of Criminal Procedure. That section, unlike section 710.30, required notice only "where the people intend to offer a confession or admission in evidence” (emphasis added). In interpreting that provision, the Court of Appeals held that notice was not required when a statement was being offered only to impeach a defendant’s credibility and not as substantive evidence of guilt. (People v Harris, 25 NY2d 175 [1969].)[3]
Approximately one year later, the Legislature replaced section 813-f with section 710.30, and changed the language of the statute to require notice of "evidence of a statement made by a defendant to a public servant” — thereby purposefully eliminating the restrictive language which formed the basis for the opinion in People v Harris (supra). In order for the court to adopt the People’s interpretation of section 710.30, it would be forced to ignore the Legislature’s revision in the wake of People v Harris, and read section 710.30 as being identical to section 813-f.
Finally, as a matter of policy, section 710.30 provides for a pretrial procedure which is more orderly than that proposed by the People. Their suggestion that the court return to the procedure which was outlined in section 813-f and subsequently approved in People v Harris (supra), would require unnecessary duplicative hearings. The revised procedure contained in article 710 and section 60.45 provides for a determination by the court, in one hearing, of the voluntariness of a *506 statement prior to its use by the People, even for purposes of impeachment. A statement is "involuntarily made” not only if it is obtained in violation of a defendant’s constitutional rights, but also if it is the product of coercion. (CPL 60.45.) A statement which is obtained by coercive means may not be used to cross-examine a defendant or as part of the People’s case on rebuttal. (New Jersey v Portash, 440 US 450 [1979]; Mincey v Arizona, 437 US 385 [1978], supra; Harris v New York, 401 US 222 [1971], supra; People v Walker, 67 NY2d 776 [1986]; People v Maerling, 64 NY2d 134, 140 [1984]; People v Washington, 51 NY2d 214 [1980], supra.)
In the instant case, the court conducted a hearing in which a police officer was asked about the circumstances surrounding the acquisition of five statements. At that hearing, the court, as in all such hearings, made a determination pursuant to CPL 60.45 regarding both the voluntariness of the statements and the propriety of police conduct in their acquisition. (Compare, CPL 60.45 [2] [a], with CPL 60.45 [2] [b]; see also, People v Graham, supra.)
Were the court to adopt the People’s proposal, it would review, at a pretrial hearing, five such statements, but not the sixth. Rather, a second hearing would occur during, and thereby interrupting, trial to examine the voluntariness of the sixth statement. Such a clumsy and inefficient procedure could not have been, and was not, intended by the Legislature.[4]
The process outlined in section 710.30 is not only more orderly than that proposed by the People, but also fairer. Were the People’s interpretation of the legislative scheme correct, a prosecutor could withhold notice of a statement, wait until the defendant testified, and then call a police officer to rebut his or her testimony by use of a statement of which counsel and the court were unaware. Such surprise tactics were exactly the kind of occurrence which section 710.30 notice was designed to prevent. (See, e.g., People v Ortiz, 142 AD2d 229, 230 [1st Dept 1988], lv denied 73 NY2d 981 [1989] [reversal required where eyewitness testified to an unnoticed photographic identification during cross-examination by defense counsel, since defense counsel’s question was made "in *507 reliance upon the People’s implicit representation, by its failure to serve the required notice, that the witness had not made such prior identification”].)[5]
For all the reasons stated, the People are precluded from using the sixth statement at "trial” — with trial being defined as including the People’s direct case, cross-examination of the defendant, and the People’s case on rebuttal.[6]

. The opening paragraph of CPL 1.20 provides that "[e]xcept where different meanings are expressly specified in subsequent provisions of this chapter * * * the following terms have the following meanings”. The definitions which follow the opening paragraph include the above-referenced description of the term "trial.”

. L 1979, ch 412.

. This was logical because, as the Court of Appeals noted in Harris (supra), there was, at the time, no purpose for notice when a statement was used solely for impeachment, since there was no bar to its use (People v Kulis, 18 NY2d 318 [1966]), and thus no need for a preliminary hearing regarding its admissibility. However, with the adoption of CPL 60.45 — along with the United States Supreme Court’s decision the following year in Harris v New York (401 US 222 [1971]) — it became clear that a voluntariness hearing was required even when the People sought only to impeach a defendant with the prior statement. (Cf., Mincey v Arizona, 437 US 385 [1978]; People v Washington, 51 NY2d 214 [1980].) Thus, it became necessary to expand the notice provisions to include such statements. The more expansive language in section 710.30, which was adopted contemporaneously with section 60.45, accomplishes this purpose.

. When the People wait until after the defendant testifies to offer a statement against him for impeachment purposes, even in the absence of section 710.30 notice, the trial must be interrupted for a hearing on the voluntariness of the statement by the court out of the presence of the jury. (People v Whitney, 167 AD2d 254 [1st Dept 1990], lv denied 77 NY2d 912 [1991].)

. The court is aware of several cases which would appear to hold otherwise — in seeming conflict with the clear language of the statute. (See, e.g., People v Goodson, 57 NY2d 828 [1982]; People v Acosta, 180 AD2d 505 [1st Dept 1992], lv denied 80 NY2d 827 [1992] [People had "good cause” for not providing section 710.30 notice of statement where defendant "opened the door” regarding the statement, which the People had not previously intended to offer at trial].) However, upon closer examination those opinions fulfill, rather than contradict, the statutory mandate. In each of those cases, the People never intended to use the statements in question. It was only after the defendant testified that the prosecution decided that it wished to offer the statement to impeach him. Section 710.30 only requires notice when "the people intend to offer” a statement at trial (emphasis added). In the instant case, the People made known, in advance of trial, their specific intention to use the statement for impeachment and as part of their case on rebuttal.

. As a separate and independent basis for barring the People from using the statement at issue at trial, the court finds that it is inadmissible under People v Molineux (168 NY 264 [1901]).