■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CRAIG LEWIS, Appellant. [786 NYS2d 494]—

Judgment, Supreme Court, New York County (Edward McLaughlin, J.), rendered April 8, 2002, convicting defendant, after a jury trial, of burglary in the second degree and criminal contempt in the first and second degrees, and sentencing him to concurrent terms of 5 years, $1^{1}/_{3}$ to 4 years and 1 year, respectively, affirmed.

Based on an incident that occurred on July 24, 2001, defendant was charged with first-degree criminal contempt, and, based on an incident that occurred on August 20, 2001, he was charged with second-degree burglary and second-degree criminal contempt. At trial, the People presented evidence that, in the July 24 incident, defendant entered the apartment of the complainant, his former girlfriend, in violation of an order of protection, and used physical force against the complainant, causing her head to bleed. With regard to the August 20 incident, the People presented evidence that, on that date, defendant again entered the complainant's apartment in violation of an order of protection, and, while inside the dwelling, threw some of the complainant's belongings out the window. The jury

found defendant guilty of first-degree criminal contempt based on the July 24 incident, and of both second-degree burglary and second-degree criminal contempt based on the August 20 incident.

With regard to the first-degree criminal contempt conviction based on the July 24 incident, defendant argues that he is entitled to a new trial because the court failed to submit justification as a defense to those aspects of the first-degree criminal contempt charge involving physical contact with the complainant (Penal Law § 215.51 [b] [v]). This argument is without merit. Defendant testified that he used physical force against the complainant on that occasion because she pushed him. In view of all the evidence, defendant's testimony was insufficient to raise a genuine issue as to whether he reasonably believed that his use of force against the complainant was necessary to defend himself from what he reasonably believed to be the use or imminent use of unlawful physical force (see Penal Law § 35.15 [1]). Accordingly, the court properly declined to charge the jury on the defense of justification.

With regard to the August 20 incident, it appears that defendant challenges only his conviction for second-degree burglary. Insofar as defendant challenges the sufficiency or weight of the evidence on which this conviction is based, his arguments are unavailing. As here relevant, a person commits second-degree burglary by knowingly entering a dwelling unlawfully, with the intent to commit a crime therein (see Penal Law § 140.25 [2]; People v Polanco, 279 AD2d 307 [2001], lv denied 96 NY2d 833 [2001]). The People presented evidence that, on August 20, 2001, defendant entered the complainant's apartment in violation of the order of protection, and threw the complainant's belongings out the window. The jury could reasonably infer from this evidence that defendant had entered the apartment in order to commit a crime therein, not (as defendant testified) for the purpose of "get[ting] some rest."[1] The People had no obligation to allege or establish the particular crime defendant intended to commit within the apartment, or that the intended crime was actually committed; and the intention to commit a crime could be inferred from the circumstances of the entry (see People v Mahboubian, 74 NY2d 174, 193 [1989]; People v Mackey, 49

---

1. We do not understand the dissent's position that "[n]othing in the record conclusively refutes defendant's contention that he went into the apartment intending only to get some rest." It seems to us that if the jury believed that defendant entered the apartment with the intention to throw the complainant's belongings out the window, that would conclusively refute defendant's contention that he went into the apartment "to get some rest."

NY2d 274, 278-281 [1980]; *People v Gilligan*, 42 NY2d 969 [1977]).[2]

Although the dissent does not suggest that the burglary count of the indictment should be dismissed, it states, in closing, that one ground for reversal of the burglary conviction is "legal insufficiency." We do not understand this position. The complainant competently testified that, at about 3:00 A.M. on August 20, 2001, she returned to her apartment and found defendant sleeping in her bed, in violation of an order of protection she had obtained against him. When the complainant woke defendant up and asked him to leave, he responded with verbal and physical abuse, essentially chasing her out of her own home. After defendant (who had followed the complainant out of the apartment) was arrested, the complainant, upon returning to her building, noticed that the fire escape ladder leading to her apartment was pulled down, and that "[her] pocketbook and [her] papers" were strewn on the ground below her window.[3] Bearing in mind the aforementioned principle that the People had no obligation to allege or prove the particular crime defendant intended to commit within the apartment (*see People v Mahboubian*, 74 NY2d at 193; *People v Mackey*, 49 NY2d at 278-281; *People v Gilligan*, 42 NY2d at 969), this evidence was plainly sufficient to support defendant's burglary conviction.[4]

Defendant also argues that the trial court erred in instructing the jury that, for purposes of the "enters . . . unlawfully" ele-

---

**2.** Since the People were not required to prove the particular crime defendant intended to commit within the apartment, the dissent is incorrect in its assertion that the court's instructions were required to "convey the necessity to reach and decide [the] question" of whether "defendant *entered* the premises with the *intention* of ejecting any of the complainant's belongings from the apartment."

**3.** The dissent appears to be under the misapprehension that defendant was arrested inside the apartment. It is clear from the testimony of both the complainant and the arresting officer that defendant was arrested on the street, in the complainant's presence.

**4.** The dissent places unwarranted emphasis on the prosecutor's apparent inadvertent factual error in referring to July 24 in the course of questioning a police witness about the August 20 incident, in which the complainant returned home at 3:00 A.M., found defendant sleeping in her bed, and subsequently found her belongings strewn outside. Defense counsel raised no objection to the line of questioning to which the dissent refers, and, in any event, the erroneous references to July 24 in the prosecutor's questions do not detract from the sufficiency of the other evidence—in particular, the complainant's testimony—to support defendant's conviction for committing burglary on August 20, 2001. In addition, whether a telephone was among the items thrown out of the apartment is a less-than-compelling inconsistency between the complainant's testimony and that of the arresting officer, and does not affect the sufficiency of the evidence to support the burglary conviction.

ment of the burglary count (Penal Law § 140.25), the complainant could not grant defendant a license or privilege to enter premises from which he had been excluded by a court order. Defendant's argument is without merit, as the challenged instruction was entirely correct (*see People v Scott*, 195 Misc 2d 647, 651 [2003] [entry into premises in violation of an order of protection satisfied unlawful entry element of the crime of burglary]; *People v Pau Luong*, 180 Misc 2d 953, 954 [1999] [same]).

Although the dissent also rejects defendant's challenge to the trial court's instruction on the element of unlawful entry, it appears to reach this conclusion based on lack of sufficient evidence to establish the complainant's consent to defendant's entry into the apartment at the relevant time. We disagree with the apparent suggestion that entry into premises in violation of a court order does not, by itself, satisfy the unlawful entry element of the crime of burglary, a position for which the dissent cites no supporting authority. As we understand the law, once a court has ordered an individual to stay away from specified premises, the individual must comply with the order while it remains in effect, regardless of anything said or done by the occupant of the premises. Stated otherwise, the occupant of the premises has no power to grant a license or privilege to enter the premises, within the meaning of Penal Law § 140.00 (5), to a person who is required by court order to refrain from entering those premises. The dissent's suggestion to the contrary is troubling, especially given that an order of protection is typically issued for the benefit of a person endangered by pressure and undue influence exerted by the person to whom the order is directed.

The dissent finds merit in another objection defendant raises to the court's main charge on the burglary count, notwithstanding that the charge clearly tracked the relevant language of Penal Law § 140.25, and, as the dissent acknowledges, conformed to "the standard charge for burglary in the second degree." The main charge was still erroneous, defendant and the dissent argue, on the ground that (in the dissent's words) it "never apprised the jurors, as requested by defendant, that entry into a dwelling in violation of an order of protection does not constitute the requisite intent to commit a crime therein" under the burglary statute. We disagree.

Neither defendant nor the dissent identifies any particular language in the main charge that was erroneous. Their complaint is not with any language that the court actually included in the main charge (which followed the pattern jury instructions), but with the court's denial of defendant's request

for an additional instruction further spelling out that the crime he intended to commit within the dwelling had to be different from the crime of unlawful entry. No authority requiring such an expansion of the pattern jury instructions is cited.[5] We further note that the adoption of the position taken by defendant and the dissent would invalidate the pattern jury instructions for burglary in all cases, not just this one.

In our view, the main charge on the burglary count in this case, by tracking the statutory language and the pattern jury instructions, sufficiently informed the jury that unlawful entry into the premises, and intent to commit a crime within the premises, are separate elements of the offense (*but see People v Tillman*, 273 AD2d 913 [2000], *lv denied* 95 NY2d 939 [2000]). From the court's use of the word "therein" (e.g., the instruction that "[a] person commits [burglary] when he knowingly enters unlawfully in a building with intent to commit a crime *therein*"), the jury could reasonably be expected to understand that the People were required to prove that defendant intended to commit a crime inside the apartment, in addition to, and separate from, his unlawful entry into the apartment.[6] Accordingly, the court committed no error in denying defendant's request for an additional instruction not found in the pattern jury instructions.

Although defendant makes no such argument, the dissent appears to suggest that the main charge was erroneous on the additional ground that it failed to convey to the jury that a burglary conviction required a finding that defendant intended to commit a crime within the complainant's apartment at the time he unlawfully entered the dwelling (*see People v Gaines*, 74

---

5. Neither *People v Cahill* (2 NY3d 14 [2003]) nor *People v Blacknall* (63 NY2d 912 [1984]) supports the dissent's position that the trial court erred in denying defendant's initial request for a supplemental instruction not found in the pattern jury instructions. While *Cahill* devoted some discussion to the elements of burglary in the course of addressing whether the accused had committed capital murder within the meaning of Penal Law § 125.27, the case did not raise any issue concerning the contents of a proper burglary instruction. *Blacknall*, a grand larceny case, does not even discuss the crime of burglary.

6. Whether a jury subjectively understood what a properly formulated instruction was intended to convey is a question that arises only when the jury asks a question during its deliberations that manifests confusion on a point of law. When the court receives such a question from the jury (as occurred here), an error in the court's response may (if not harmless) warrant reversal of the conviction. In this case, however, defendant failed to preserve for appellate review, and affirmatively waived, his objection to any error in the supplemental instruction the court delivered in response to the jury's note. This point is more fully discussed below.

NY2d 358, 359-360, 363 [1989]). Any suggestion that the court failed to express this concept is simply wrong. The court specifically instructed the jury that "the purpose, the intent to commit a crime therein *has to be present at or before* the unlawful entering into the building" (emphasis added). The court subsequently reiterated this principle: "The point is, you [have] got to have the intent to commit a crime in the building *before you enter the building*" (emphasis added). Finally, the court concluded its instructions on burglary by reminding the jury that a conviction required a finding that defendant had "entered the building, the dwelling, *intending* to commit a crime therein" (emphasis added).

Defendant and the dissent further object to certain remarks the court made in colloquy with counsel, outside the jury's presence, before the jury was instructed on the law. In these remarks, the court expressed the view that an entry in violation of an order of protection could satisfy both the elements of unlawful entry and of intent to commit a crime within the unlawfully entered premises. The main charge that was subsequently read to the jury, however, did not include any language reflecting the substance of the colloquial remarks in question. Because these remarks did not find their way into the instructions the court actually read to the jury, such remarks are irrelevant to the determination of this appeal. What is relevant is the charge the court actually delivered, and, to reiterate, the court delivered a correct main charge, even if it did so inadvertently.[7]

Defendant also challenges a one-sentence supplemental instruction on the burglary count that was given in response to a note from the jury. The dissent agrees with defendant, and concludes that, even if there was no error in the main charge, the supplemental instruction, by itself, requires reversal of the burglary conviction. Again, we disagree. The fact is that defendant not only failed to preserve his objection to the supplemental instruction, but, as the record demonstrates, he waived that objection by specifically formulating and requesting the challenged instruction.

During deliberations, the jury handed up a note reading as follows: "With regard to element three of burglary [intent to commit a crime within the building] is intent in the contempt

---

7. To the extent the dissent suggests that the prosecutor, in her summation, erroneously stated what would constitute burglary in this case, such error would provide no grounds for reversal as a matter of law, as defense counsel did not object to the comment in question, nor is there any reason, on this record, to invoke our interest-of-justice powers to consider such issue.

in the first [*sic*] degree relevant since it applies to element one and two [that defendant entered unlawfully and did so knowingly]?" In the course of the colloquy concerning the response to the note, the prosecutor suggested that the court respond to the note by telling the jury that, "yes, contempt can be the basis for an attempt to commit a crime therein [as an element of burglary]." The following exchange then took place:

"[DEFENSE COUNSEL]: I don't have to[o] much problem with what [the prosecutor] just said. I would say in the last part, you should say, if it is your general question as to whether contempt can be many—the crime [that] constitutes contempt can be the basis for a burglary charge, the answer is yes. If you would premise it, if that is their general question.

"THE COURT: All right. I will do it that way." Immediately thereafter, the jury was brought back into the courtroom, and the court gave, in substance, the supplemental instruction that defense counsel had formulated and requested ("If your general question has to do with whether conduct that constitutes contempt can be the basis of a burglary the answer is, yes"). This is the supplemental instruction of which defendant now complains, and which the dissent finds to require a new trial.

Since the challenged supplemental instruction was specifically requested by defense counsel, not only did defendant fail to preserve for our review any objection to that instruction (*see* CPL 470.05 [2]), he affirmatively waived any such objection (*see* *People v White*, 53 NY2d 721, 723 [1981]; *People v Aezah*, 191 AD2d 312, 313 [1993], *lv denied* 81 NY2d 1010 [1993]). Further, review in the interest of justice is not warranted, since any error in the response to the note was "invited" by defense counsel, who not only requested the instruction, but formulated it as well (*see* *People v Albert*, 206 AD2d 320, 323 [1994], *affd* 85 NY2d 851 [1995]; *People v McPherson*, 198 AD2d 119, 119-120 [1993], *lv denied* 82 NY2d 927 [1994], citing *People v Acosta*, 180 AD2d 505, 509-510 [1992], *lv denied* 80 NY2d 827 [1992]). This conclusion is reinforced by the consideration that, as previously discussed, the conviction is supported by sufficient evidence, and clearly comports with the weight of the evidence.

Notwithstanding that defense counsel formulated and requested the supplemental instruction in question, the dissent finds the issue concerning this instruction preserved for review because, during the precharge colloquy, the court had earlier disagreed with defense counsel's argument that the same act could not satisfy both the unlawful-entry and intent-to-commit-a-crime elements of burglary. This overlooks the fact that, as previously discussed, any alleged error in the views the court

stated during the precharge colloquy did not affect the burglary instructions originally read to the jury. Again, as even the dissent concedes, the court initially "delivered the standard charge for burglary in the second degree." Thus, at the time of the colloquy concerning the note from the jury, the court had not yet given an erroneous burglary instruction, and, at that point, a request for an appropriate response to the jury's note still could have averted any alleged error (see CPL 470.05 [2] [the protest of a ruling or instruction is timely if made "at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same"]). Instead of taking advantage of this opportunity for avoiding any possible error, defense counsel proposed a supplemental instruction expressing a view of the law that had not previously been imparted to the jury. In our view, such conduct cannot be deemed to have preserved an objection to a supplemental instruction that was formulated and requested by defense counsel himself.

The dissent's view that defense counsel was not required to reiterate defendant's position in the colloquy concerning the note from the jury assumes that, during the charge conference, the court had already issued a "ruling" adverse to defendant on the issue presented by the note, thereby obviating the necessity for further protest. The fact remains, however, that the arguably erroneous legal view expressed by the court during the charge conference had not been incorporated into the main charge the court delivered to the jury. Thus, the court's precharge statements to counsel were not rulings; rather, such statements were the equivalent, at trial, of dicta in a written judicial opinion. Stated otherwise, the issue raised by the jury's note was one on which the court had not previously ruled. Even if the court's prior statements could be deemed to excuse defense counsel's failure to protest the court's intended response to the note, defense counsel did far more than acquiesce in the court's response. Again, defense counsel actually formulated a response to the note, and requested that the court use that response, which the court did. Defendant should not be heard to complain that the court delivered a supplemental instruction that his own counsel proposed on an issue that was not the subject of any prior ruling (as opposed to mere discussion) by the court.

Finally, we perceive no basis for reducing the sentence. Concur—Nardelli, J.P., Sullivan and Friedman, JJ.

Tom and Lerner, JJ., dissent in a memorandum by Tom, J., as follows: At issue on this appeal is whether defendant's violation

of a court order of protection, without more, is sufficient to support his conviction for burglary in the second degree. It is clear that his initial violation of the order, by breaking into the complainant's dwelling, satisfies the unlawful-entry element of the crime. The same act, however, cannot satisfy the intent-to-commit-a-crime-therein element, although the intent to commit some further act in violation of the order of protection would support the burglary conviction. The instructions given to the jurors, however, were insufficient to apprise them of the necessity to observe this distinction. Thus, the court relieved the People of their obligation to establish each and every element of the crime of burglary, and a new trial is warranted as to that charge.

The indictment against defendant arose out of two separate incidents, which occurred on July 24 and August 20, 2001. On each occasion, defendant entered the apartment of his sometime girlfriend in violation of an order of protection that, among other things, directed him to stay away from her home and to refrain from assaulting, harassing, menacing or intimidating her. By way of background, defendant and the complainant had previously resided together in her apartment, to which defendant had been given keys and for which he was supposed to contribute rent. Although she had obtained a previous order of protection in April 2001 that did not expire until 2004, the complainant subsequently permitted defendant to return to her home.

At about 8:40 P.M. on the evening of July 24, 2001, police officers responded to the report of an assault in progress at the complainant's apartment. They encountered defendant standing near the complainant's apartment door as they approached. They found the complainant in the bathroom, "extremely upset" and bleeding from a head wound. Defendant exhibited no sign of injury and was taken into custody. A set of apartment keys was recovered from his pocket and returned to the complainant.

According to the complainant, an argument had erupted when she told defendant to "get his stuff off of my table." According to defendant, the complainant had begun pushing him, whereupon the two "tussled," with the result that she sustained a head injury that began to bleed. Although defendant later denied it, the complainant testified that he had struck her in the head with a plate, at which point she called the police and requested an ambulance.

The complainant was reluctant to pursue charges against defendant. She told the Assistant District Attorney that her injury

had been an accident brought about by her nagging. As a result, defendant was released from jail on his own recognizance on July 30, 2001. Yet another order of protection was issued against him at that time. Several days later, the complainant again allowed defendant to return to her home. However, they continued to argue over the ensuing weeks and, on August 17, 2001, the complainant threw defendant out of her apartment and took away his keys.

On August 20, 2001, after staying with a girlfriend for two days, the complainant returned to her home at about 3:00 A.M., only to find defendant in the apartment. She told him to leave "quite a few times" and finally went down to the street to call the police from a pay phone. Defendant followed her, berating her and admonishing her to go back upstairs. When the police arrived, she showed them the order of protection, and defendant was again placed under arrest.

The responding police officers noticed that the fire escape ladder leading to the complainant's apartment had been pulled down to the ground. They also observed a knapsack, some papers and a telephone lying on the ground directly under the complainant's apartment window.[1] Defendant denied that he threw the complainant's belongings from the window and averred that the complainant never had a telephone in her apartment. The complainant also testified that she did not have a telephone in the apartment.

Defendant denied that he used the fire escape to enter the premises, claiming instead that he had gained entry by jimmying the lock on the apartment door. In either event, it is undisputed that defendant entered the apartment without the complainant's consent. What cannot be ascertained is whether the jurors believed that defendant *entered* the premises with the *intention* of ejecting any of the complainant's belongings from the apartment since the court's instructions to the jury did not convey the necessity to reach and decide this question.

The jury found defendant guilty of burglary in the second

---

1. Although the prosecutor, in examining Police Officer Ronald Martiny, consistently addressed questions to the witness concerning the events of July 24, 2001, it is clear that the events that the officer was actually describing were those of August 20, 2001. The July 24th altercation took place before 9:00 P.M. Defendant was taken into custody well before midnight and was held for the next 10 days. Therefore, defendant could not have been present in the complainant's apartment after 3:00 A.M. that same night, as the witness recounted. As the complainant testified, it was in the early morning hours of August 20th at about 3:00, that she returned to her apartment to find defendant in her bed.

degree, criminal contempt in the first degree and criminal contempt in the second degree. Defendant appeals from his conviction for criminal contempt in the first degree arising out of the events of July 24 and for burglary in the second degree in connection with the events of August 20.

Defendant contends that the failure to deliver a justification charge with respect to first-degree criminal contempt constitutes reversible error. A person commits criminal contempt in the first degree when he knowingly violates a duly served order of protection with the "intent to harass, annoy, threaten or alarm" the person for whose protection the order was issued, and he "strikes, shoves, kicks" or otherwise subjects or threatens to subject the protected person to physical contact (Penal Law § 215.51 [b] [v]). Under Penal Law § 35.15 (1), a person may be justified in using physical force on another person if he "reasonably believes such to be necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force."

A defendant is entitled to a justification charge whenever there is evidence to support it (*People v McManus*, 67 NY2d 541, 549 [1986]). The evidence here consists only of defendant's assertion that the complainant pushed him. His testimony is insufficient to establish that his use of physical force was reasonably believed to be necessary to defend himself from the limited physical force employed against him. Thus, no instruction as to justification was warranted.

To prove defendant guilty of burglary in the second degree, the People were required to establish (1) that he knowingly entered or remained in the complainant's dwelling "unlawfully" and (2) that he did so with intent to commit a crime "therein" (Penal Law § 140.25 [2]). Defendant contended that he had the complainant's permission to enter her apartment. Noting that unlawful entry is defined by the Penal Law as entry "in or upon premises when [the defendant] is not licensed or privileged to do so" (Penal Law § 140.00 [5]), defendant contended that the court should have instructed the jury that the prosecution was required to prove that he was not "licensed or privileged" to enter the complainant's apartment and, further, that her prior consent to accept defendant back into the apartment, despite the prohibition in the protective orders, was tantamount to the requisite license or privilege. The trial court rejected defendant's requested charge, holding that the victim's consent could not override a protective order or make lawful that which the protective order forbade. Therefore, the court instructed the jury: " 'Unlawfully' means that a person

has no license or privilege to enter into the dwelling. To have no license or privilege to enter means to have no right, permission or authority to do so. In this situation, where a Court has directed somebody not to go some place, nobody can overrule that."

In the absence of a stay, the parties are generally obligated to obey a court order until it is vacated or reversed on appeal (*see Russell v Tejada*, 4 AD3d 661 [2004]). In any event, the record contains sufficient evidence to support the conclusion that whatever consent the complainant may have given to defendant to enter into and remain in her apartment had been withdrawn prior to the events of August 20. Notable in this regard is the retaking of defendant's keys (*see Matter of Eight Cooper Equities v Abrams*, 143 Misc 2d 52, 54-55 [1989] [surrender of apartment is accomplished by vacating premises and returning the keys]). Therefore, under these facts, defendant's entry onto the subject premises was both "unlawful" within the meaning of the burglary statute and a violation of the order of protection issued to the complainant, thus comprising criminal contempt. Because it is clear that the complainant did not consent to defendant's entry into her dwelling, it is unnecessary to reach the issue of whether entry with the consent of a person in control of a dwelling but in violation of an order of protection constitutes unlawful entry within the meaning of the burglary statute.

The second element of burglary—entry with the intent to commit a crime while within the dwelling—is more problematic. Nothing in the record conclusively refutes defendant's contention that he went into the apartment intending only to get some rest. Upon the complainant's return, however, an argument ensued and defendant is then alleged to have committed additional acts that were also in violation of the order of protection. The defense specifically requested the court to charge that, as to burglary, the intent-to-commit-a-crime-therein element cannot be satisfied by merely showing that defendant intended to violate the orders of protection by entering into the apartment; rather, it must be shown that, at the time of the illegal entry, he intended to commit some additional crime. The court, however, declined the request and expressed its view that defendant's mere presence in the apartment in violation of the orders of protection constituted a burglary.

This exchange demonstrates that the trial court misapprehended both this Court's decision in *People v Polanco* (279 AD2d 307 [2001], *lv denied* 96 NY2d 833 [2001]) and the Appellate Division, Third Department's ruling in *People v Clemins*

(158 AD2d 854 [1990], *lv denied* 76 NY2d 732 [1990]), cases on which it relied. In *Clemins*, the defendant kicked in the victim's door, dragged her from the dwelling and forcibly detained her in a vehicle. The Court stated, "Although defendant claimed that he entered the dwelling only for the purpose of talking to the victim in order to resume their relationship, the jury could properly find from defendant's actions that he entered with the intent to assault her, unlawfully imprison her, show his contempt for the order of protection or commit criminal mischief" (*id.* at 855). In the context of the several offenses listed, the reference to contempt for the court order clearly contemplates acts in further violation of the order of protection and not the initial unlawful entry into the dwelling. Similarly, in *Polanco* (279 AD2d at 308), we noted, "Although, at the time of his forcible entry, defendant was already in violation of the order, he clearly intended to violate it further, and more seriously than before." The trial court incorrectly interpreted these cases.

The defense submitted a written request for a clarifying instruction:

"That the intent to commit a crime therein element of the burglary statute cannot be satisfied merely by showing the defendant's intent to violate the Court order by going to or entering into the complainant's apartment. Rather, it must be shown he intended to commit some additional crime.

"The jury may be instructed, however, that if proved such additional crime could include further or more serious violations of the Order of Protection beyond the mere entry into the apartment, such as harassing the complainant, striking the complainant, etcetera, citing People versus Polanco, People versus Pau L[u]ong."

The court responded, "I disagree. I believe the Third Department already said they disagree." It went on to state: "I think this is a rare situation where the knowledge and the intent coalesce. He knows that's a violation of the Order of Protection, he knows that's a contempt and he has for some reason a desire to show the complaining witness [who] personally acquired the Order of Protection, that I don't fear the Court, I'm bold enough to want to prove to you that I can violate this, I'm here. I don't think he has to do anything other than that and that's the way I understand the Cremins [*sic*] case to mean and that's the way I understand Polanco, notwithstanding the superfluous things they said."

As to the preservation of the issue for appellate review, the trial court was clearly on notice of defense counsel's disagree-

ment with its ruling, immediately going on to state, "So, if I'm wrong and if there's a conviction, you got all sorts of folks willing to help you with the brief."

Prior to deliberations, the court delivered the standard charge for burglary in the second degree, instructing the jurors, "A person commits that crime when he knowingly enters unlawfully in [sic] a building with intent to commit a crime therein and when the building is a dwelling." The court never apprised the jurors, as requested by defendant, that entry into a dwelling in violation of an order of protection does not constitute the requisite intent to commit a crime therein.

During deliberations, the jury sent a note to the court requesting guidance on the relevance of defendant's commission of contempt with respect to the elements of unlawful entry and intent to commit a crime therein. The note read: "With regard to element three of burglary,[2] is intent in the contempt in the first degree[3] relevant since it applies to element one and two." The prosecutor indicated her understanding of the question, stating that "they seem to be indicating that the unlawful entry relating [sic] back to the order of protection. Telling [him] not to go there. They want to know if it can be the basis of intending to commit a crime therein. I thought we had a lot of discussion in the charge conference, the answer was yes."

The prosecutor's recollection accurately describes the court's ruling on this point. Following further colloquy concerning the precise question that was being posed in the jurors' note and the evident confusion concerning the dates of the respective acts of criminal contempt, the prosecutor proposed that the jurors be told that "contempt can be the basis for an attempt to commit a crime therein." Defense counsel merely asked the court to preface the response with the words "if it is your general question." Consistent with its opinion, expressed during the charge conference, that unlawful entry in violation of an order of protection constitutes a burglary, the court responded: "If your general question has to do with whether conduct that constitutes contempt can be the basis of a burglary the answer is, yes."

When the court directed the jurors to resume their delibera-

---

**2.** The court charged the elements of burglary as: (1) "the defendant entered the building at 154 West 129th Street and that . . . is a dwelling," (2) "he entered knowing that his entry was unlawful" and (3) "he entered the building, the dwelling, intending to commit a crime therein."

**3.** Defendant was charged with criminal contempt in the second degree with respect to the events of August 20; the first-degree contempt charge relates to the events of July 24.

tions, one juror responded, "Your Honor, we don't need to." Following a sidebar discussion with counsel, the court stated:

"Got to go back in there for at least a period of time so that I'm comfortable that you are comfortable that you think that you are in a position that you reached a verdict.

"If you are in fact in a position write a note with the time on it." The jurors left the courtroom at 5:57 P.M. Two minutes later, at 5:59 P.M., the court received a note from the jurors, indicating that they had reached a verdict.

Intent to commit a crime can be inferred from the attendant circumstances (*e.g. People v Barr*, 75 AD2d 14, 15 [1980], *lv denied* 50 NY2d 999 [1980]; *People v Orange*, 251 AD2d 238 [1998], *lv denied* 92 NY2d 951 [1998]), and defendant's actions are therefore subject to interpretation by the jury. It is defendant's contention that, at the time he unlawfully entered the premises, he harbored only the intention to take a nap (*People v Gaines*, 74 NY2d 358, 363 [1989] ["The jury could have concluded from defendant's testimony that he intended no crime when he broke into the building."]). Indeed, the complainant testified that she discovered defendant "laying in my bed." The court's supplemental charge effectively prevented the jury from evaluating the second element of burglary in the second degree in that the instructions conflated burglary's unlawful-entry element with its intent-to-commit-a-crime-therein element, permitting both to be established by the finding that defendant intended to violate the court order of protection by entering the apartment, the basis for defendant's conviction for criminal contempt in the second degree. As stated in *Gaines* (74 NY2d at 363), "the charge given by the court could have misled the jurors into thinking that any illegal entry constituted a burglary when coupled with a subsequent crime, and it was therefore reversible error." The instruction relieved the prosecution of its burden to prove each element of the crime charged (*People v Pau Luong*, 180 Misc 2d 953, 955 [1999]).

Moreover, while entry into the complainant's apartment in violation of the orders of protection, standing alone, constitutes evidence that defendant may have been guilty of criminal contempt, the burglary charge requires proof that, at the time defendant entered the apartment, he intended to commit a crime *within* the dwelling (Penal Law § 140.25 [2]). Defendant's intent to enter the apartment, in violation of one aspect of the protective order, does not constitute proof of intent to commit a crime once he was inside the apartment. The prosecution is required to prove that defendant intended to commit a crime beyond simple criminal trespass *at the time of the unlawful*

*entry* (*see People v Cahill*, 2 NY3d 14, 62-72 [2003]), and the intent to violate the orders of protection by entering the apartment is therefore insufficient to supply the intent necessary to support the burglary conviction. Although other actions prohibited by the protective order might constitute intended crimes so as to satisfy the intent element of burglary (*see People v Polanco*, 279 AD2d 307 [2001], *supra*), the court's supplemental instruction effectively precluded the jurors' assessment of defendant's intent at the time he entered the complainant's dwelling.

It is clear from the transcript of the charge conference and the court's supplemental instruction in response to the note from the jurors, that it considered defendant's violation of the order of protection (by entering upon the premises occupied by the complainant as her dwelling), without more, to constitute the crime of burglary in the second degree. The discussion concerning the jurors' note clearly reflects counsels' understanding of the court's prior ruling on this point, which, as the court noted on the record, presented an issue for appeal. Consistent with its earlier ruling, the court did not deliver the instruction—previously requested by the defense and clearly warranted by the jury's question (*see Gaines*, 74 NY2d at 360, 363)—that the crime defendant intended to commit at the time of entry must be distinct from the violation of the order of protection represented by his unlawful entry.[4]

The People do not contend that the supplemental instruction requested by the defense was inaccurate in any way. Rather, the People argue, disingenuously, that because the court's initial instruction tracked the statutory language, the jury "surely understood" that unlawful entry and intent to commit a crime were separate elements and "certainly comprehended that 'therein' meant that defendant intended to commit a crime *inside* the dwelling, as distinguishable from the separate element of 'unlawful entry.' " The short answer to this contention is that the keen analytical powers that the People ascribe to a panel of lay persons (*see People v Kelly*, 302 NY 512, 517 [1951]) were obviously not shared by either the court or the prosecutor, both of whom held fast to the view that defendant's mere presence in the apartment in violation of the court orders of protection was sufficient to comprise the crime of burglary.

---

4. The necessity to instruct the jury that a defendant must have harbored the intent to commit a separate crime within the dwelling at the time he entered it would appear to be mandated, at least where the defense requests it (*see People v Blacknall*, 63 NY2d 912 [1984]). The circumstances of this case warrant a supplemental instruction in order "to prevent the improper use of one crime as a predicate for another" (*see Cahill*, 2 NY3d 14, 66 n 35 [2003]).

This remarkable position is adopted by the majority, who suggest that because the initial charge followed the pattern jury instructions, no error was committed. However, the jurors' note raises the distinct possibility that their verdict was based on an illegal ground (*People v Martinez*, 83 NY2d 26, 33-34 [1993], *cert denied* 511 US 1137 [1994]), and reversal is required because "there is no way of knowing which ground they chose" (*id.* at 32; *see also Yates v United States*, 354 US 298, 311-312 [1957]; *Stromberg v California*, 283 US 359, 367-368 [1931]). The court's initial charge did not indicate that intent to enter the complainant's dwelling in violation of the orders of protection fails to satisfy the intent-to-commit-a-crime element of burglary. Furthermore, irrespective of the adequacy of the initial instruction, the court erroneously supplemented the charge in its response to the jurors' note, indicating that the contemptuous conduct associated with the violation of the orders of protection would satisfy the intent element of burglary. Upon hearing the supplemental instruction, a juror immediately indicated that a verdict had been reached, and this was confirmed minutes later. Thus, the totality of the court's burglary charge permitted the jurors to conclude that if defendant intentionally entered the complainant's apartment in violation of the order of protection, ipso facto, he had committed the crime of burglary. If the reasoning proposed and ultimately conveyed to the jury by the trial court were to be adopted, every violation of an order of protection that occurred in a dwelling would be elevated to the crime of burglary. Such a result should not be reached absent a clear expression of intent by way of legislative enactment (*see Cahill*, 2 NY3d 14, 65 [2003] ["In promulgating the list of aggravators, the Legislature did not expressly sweep within Penal Law § 125.27 (capital murder) all killings in which the murderer unlawfully entered the victim's home"]).

I take issue with the contention, expressed in the majority opinion, that defense counsel abandoned his objection to the court's burglary charge because he "formulated and requested the supplemental instruction in question." This view fails to appreciate either the procedure for raising a timely objection or the status of a ruling made in regard to that objection as law of the case and, in any event, is unsupported by the record.

To preserve an issue for review, a defendant is only required to register protest to an instruction at a "time when the court had an opportunity of effectively changing the same" (CPL 470.05 [2]). The defendant is not required to continually protest the court's ruling (*see People v Rosen*, 81 NY2d 237, 245 [1993] ["defendant's specific application and the court's equally specific

ruling were sufficient to preserve the issue for appeal"]). Rather, "a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered" (CPL 470.05 [2]). Defendant should not be prejudiced by his attorney's accurate perception of, and adherence to, the meaning of the governing procedural statute or by the prosecutor's interpretation of the jurors' question and formulation of a response consistent with the court's "particular ruling or instruction."

Defense counsel anticipated that the jurors would equate entry into the complainant's apartment in violation of the order of protection with the intent to commit a crime therein and therefore requested a clarifying instruction. The court refused the application. When the confusion foreseen by counsel became manifest, the prosecutor reminded everyone of the court's earlier ruling (that entry in violation of the order constitutes burglary). In view of the court's stated position, it would have been a futile gesture to request a supplemental instruction both diametrically opposed to the court's view and expressly rejected by it (see People v Bonilla, 95 AD2d 396, 431 [1983], affd 63 NY2d 341 [1984], citing Kalisch-Jarcho, Inc. v City of New York, 58 NY2d 377, 383 [1983]).

The facts of this matter do not suggest that defendant's conduct falls comfortably within the purview of burglary, which is punishable "as a serious felony . . . because of the heightened danger posed when an unlawful intrusion into a building is effected by someone bent on a criminal end" (Gaines, 74 NY2d at 362). Construing the evidence in the light most favorable to the prosecution (People v Contes, 60 NY2d 620, 621 [1983]), all that can be said of the People's proof is that defendant, who was concededly found lying in bed, got into an argument with the complainant and threw papers and the complainant's pocketbook out of the apartment window. While that conduct is criminal, it is rather more spontaneous than premeditated.

Any conclusion by the jurors that defendant harbored an intent to deprive the complainant of her possessions at the time he entered her apartment, as the majority suggest, is tainted by the prosecutor's examination of Officer Martiny, during which she consistently and incorrectly referred to the incident of July 24 while questioning the witness about the events of August 20, 2001, the incident from which defendant's burglary conviction

emanates. The misapprehension that defendant also threw the complainant's possessions from her apartment window on the earlier occasion could have led the jurors to the untoward conclusion that defendant was engaging in an intentional pattern of behavior by interfering with the complainant's personal belongings.

The prosecutor's assertion that the complainant arrived home to find her possessions thrown on the ground is simply not supported by the evidence. There is absolutely no testimony as to *when* the complainant's possessions were alleged to have been thrown from her apartment. Officer Martiny testified only that a photograph he took of items lying under the window depicted a "knapsack" and "some paperwork." The knapsack was described by the complainant as "[m]y pocketbook." She testified that she inspected the fire escape and the area under the window *after* defendant was placed under arrest, not upon her return to the premises. On her cross-examination of defendant, the prosecutor suggested that he had also thrown a telephone from the apartment. The complainant, however, in response to more than one question, had previously denied that she had a telephone in the apartment, which is consistent with her testimony that she left the building to use a pay phone on the street to call the police.

Justice is not served by upholding a conviction predicated on an insufficient legal basis (*see Cahill*, 2 NY3d at 38). As the Court of Appeals stated in *Gaines* (74 NY2d at 363), "in order to be guilty of burglary for unlawful entry, a defendant must have had the intent to commit a crime at the time of entry." And, as it noted in *Cahill* (2 NY3d at 65), burglary "is a trespass—a misdemeanor—that becomes a felony only if the trespasser intends to commit a separate crime when entering a building (*see Gaines*)."

Whatever might be made of the court's original instructions on the burglary offense, the jurors were presented with the legal proposition, clearly propounded by the prosecutor during summation, that defendant went to the complainant's apartment with the intention of committing a crime, particularly, criminal contempt, and that "[j]ust by going there he's committing the crime of Contempt." Given the sequence of events, particularly the swiftness of the verdict following the court's supplemental charge, it is highly speculative to suggest that the jurors made a deliberative determination, from the presence of the items found under the fire escape window, that defendant intended to commit a separate crime at the time he entered the apartment. Rather, the jurors were induced to conclude that, by

entering the complainant's apartment with the intention of violating the court orders of protection, defendant committed the crime of burglary.

The issue at bar is whether the People sustained their burden of proof on all the elements of each offense for which defendant stands convicted. The operative question is not whether the trial court accurately read from the criminal jury instructions but whether the jury charge, as a whole, accurately conveyed the People's burden of proof as to each element of burglary in the second degree (*see Gaines*, 74 NY2d at 363). It is apparent on this record that the court's instructions failed to apprise the jury of the need to find that entry was effected with the requisite, contemporaneous intent to commit a separate crime once within the dwelling (*see Cahill*, 2 NY3d at 64-65) and reversal is compelled if not by legal error (*see Gaines*, 74 NY2d at 363), then by legal insufficiency (*see Cahill*, 2 NY3d at 38; *Martinez*, 83 NY2d at 34-35).

Accordingly, I would modify the judgment to the extent of vacating the judgment of conviction on the burglary count and remanding the matter for a new trial on that charge.