[No. 9091–1–II.   Division Three.   May 29, 1987.]

The State of Washington, *Respondent*, v.
Gerald E. Kilponen, *Appellant*.

*Jack L. Burtch*, for appellant.

*Michael J. Sullivan, Prosecuting Attorney*, for respondent.

GREEN, J.*—Gerald E. Kilponen appeals his conviction of burglary in the first degree. He contends the court erred by (1) allowing his wife to testify against him; (2) refusing to instruct the jury that first degree burglary requires the presence of a person in the dwelling at the time of the unlawful entry; (3) admitting exhibit 3, a district court order of pretrial release, to establish entry by Mr. Kilponen into his own home was unlawful; and (4) giving certain other jury instructions. We affirm.

Mr. Kilponen and his wife of 13 years encountered a series of marital difficulties which resulted in a dissolution action and then a reconciliation. Difficulties resumed and on November 1, 1984, they separated again. Mr. Kilponen

---

*This case was heard by a panel of Division Three judges sitting in Division Two.

was excluded from the family home by several pretrial release and restraining orders because of domestic violence that had occurred in the past. On December 14, 1985, Mr. Kilponen broke into the family home with the intent of tying up his wife and making her watch him commit suicide with the rifle he had with him. His wife was not home. Once inside the house, he awaited her return. During that time he began drinking from a bottle of whiskey he brought with him and took some pills prescribed for his depression. His wife came home, went inside the house, but suspecting Mr. Kilponen was there, left without seeing him. She called the sheriff who went to the Kilponen residence and discovered Mr. Kilponen lying on the bed with a loaded and cocked rifle, some rope, an open, folding–type hunting knife, a half–gallon bottle of whiskey and a pill bottle labeled "Sinequan". Mr. Kilponen was placed under arrest after struggling with the sheriff. Later his pickup was found concealed on a nearby logging road, and it was discovered he had gained entry to the house by taking a hammer from the garage and using it to break a window above the door latch.

An information was filed charging Mr. Kilponen with first degree burglary while armed with a deadly weapon. He filed a motion in limine to exclude his wife's testimony. The motion was denied. Following a jury trial, he was found guilty of first degree burglary as charged. Mr. Kilponen appeals.

First, Mr. Kilponen contends the court erred by allowing his wife to testify against him. He relies on RCW 5.60-.060(1) and argues that the exception in the statute does not apply because no crime of personal violence was committed against Mrs. Kilponen, nor was there any evidence to establish an attempt to commit unlawful imprisonment. We disagree.

RCW 5.60.060(1) provides:

A husband shall not be examined for or against his wife, without the consent of the wife, nor a wife for or against her husband without the consent of the husband;

nor can either during marriage or afterward, be without the consent of the other, examined as to any communication made by one to the other during marriage. *But this exception shall not apply to . . . a criminal action or proceeding for a crime committed by one against the other, . . .*

(Italics ours.)

■ The marital privilege described in this statute does not apply to a criminal action or proceeding for a crime committed by one spouse against the other. Washington cases have treated RCW 5.60.060(1) as expressive of the common law rule allowing one spouse to testify against the other only where the crime committed against the testifying spouse is one of personal violence. *State v. Thompson*, 88 Wn.2d 518, 522, 564 P.2d 315 (1977); *State v. Moxley*, 6 Wn. App. 153, 156, 491 P.2d 1326 (1971). In *Thompson* the defendant was charged with second degree assault on his wife. While holding the wife could testify against the defendant, her husband, the court, at pages 523–24, approved the holding in *State v. Briley*, 53 N.J. 498, 251 A.2d 442, 36 A.L.R.3d 811 (1969), that if there is a single criminal event in which the wife and others are targets or victims of the husband's criminal conduct "in the totality of the integrated incident and *formal charges are made against the husband for some or all* the offenses committed (one of which charges is for an offense against the spouse)," the wife can testify against her husband. (Italics ours.) In *Briley* the defendant was charged with assaulting his wife and the murder of her companion. In *Moxley* the husband argued his threat to kill his wife was inadmissible because it was protected by the marital privilege contained in RCW 5.60.060(1). The court disagreed and held at page 158:

> Even if a threat can be said to be such a communication, the testimony is admissible by virtue of the statutory exception which permits the admission of such testimony in the case of a "criminal action for a crime committed by one against the other." Furthermore, we do not agree that the threat to kill the wife is protected by marital privilege against disclosure. It is not a communication

916

induced by the marital relationship. *See State v. Americk,* 42 Wn.2d 504, 506, 256 P.2d 278 (1953); J. Wigmore, Evidence § 2239 (1961, Supp. 1970).

Since there was evidence Mr. Kilponen intended to commit a crime of personal violence against his wife, the court did not err in allowing her to testify.

Nevertheless, Mr. Kilponen contends he was not charged with unlawful imprisonment or attempted unlawful imprisonment and therefore his wife should not have been allowed to testify. The jury in a special verdict found Mr. Kilponen was not only armed with a deadly weapon when he burglarized the family home, but also

> We are unanimously convinced, beyond a reasonable doubt, that the defendant entered the dwelling in question with the intent to commit the crime of unlawful imprisonment.
>
> Answer: [x] yes [ ] no

Mr. Kilponen himself testified he entered the house with the *intent of tying up his wife.* Even though he was not charged with unlawful imprisonment, under *Thompson* Mrs. Kilponen could testify. The statute does not exclude attempts. Furthermore, the particular crime the burglar intended to commit inside the burglarized premises is not an element of burglary, and thus it is not necessary to charge a specific crime intended to be committed in the burglarized premises. *State v. Bergeron,* 105 Wn.2d 1, 4–7, 711 P.2d 1000 (1985). All that need be shown is the intent to commit a crime on the premises. Contrary to what Mr. Kilponen argues, while he did not commit the crime of unlawful imprisonment, he did take a substantial step toward committing that crime, and thus could have been found guilty of attempt to commit it because the evidence shows he cut rope and brought it into the house for the specific purpose of tying up Mrs. Kilponen.

Second, Mr. Kilponen contends first degree burglary requires the presence of a person inside the dwelling at the time of the unlawful entry because under the predecessor statute, burglarizing a dwelling which was unoccupied at

the time could only be burglary in the second degree.

The present statute, RCW 9A.52.020(1), provides:

> A person is guilty of burglary in the first degree if, *with intent to commit a crime against a person or property therein,* he enters or remains unlawfully in a dwelling and if, in entering or while in the dwelling or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person therein.

(Italics ours.) In *Bergeron,* the court discussed at length the crime of burglary and noted that burglary in now a statutory offense which bears little resemblance to common law antecedents and that in this state the Legislature over time has changed the elements of the crime of burglary. *Bergeron,* at 5–6.

> The intent to commit a specific named crime inside the burglarized premises is not an "element" of the crime of burglary . . . The intent required by our burglary statutes is simply the intent to commit any crime against a person or property inside the burglarized premises.

*Bergeron,* at 4.

■■ RCW 9A.52.020(1) is clear and unambiguous and thus there is no need for judicial interpretation. *State v. Fryer,* 36 Wn. App. 312, 314, 673 P.2d 881 (1983). The statutory language does not require the person against whom the crime is intended to be committed be in the dwelling at the time of the unlawful entry. This holding is consistent with the majority view that "it is unnecessary for a person to be physically present in a residential structure at the time of a breaking and entering in order for the crime to be the highest degree of burglary . . ." Annot., *Occupant's Absence From Residential Structure as Affecting Nature of Offense as Burglary or Breaking and Entering,* 20 A.L.R.4th 349, § 3[b] at 357 (1983); *accord,* Annot., 20 A.L.R.4th § 17, at 393–96 (1983), and cases cited therein.

Third, Mr. Kilponen contends exhibit 3, a pretrial release order, was not properly authenticated and was facially invalid. We disagree.

■ First, as to the authenticity of exhibit 3, no objection

was made based on the authentication of that exhibit. A party who objects to the admission of evidence on one ground at trial may not on appeal assert a different ground for excluding that evidence. *State v. Mak*, 105 Wn.2d 692, 718–19, 718 P.2d 407 (1986). Furthermore, a theory not presented to the trial court may not be considered on appeal. *Barnes v. Seattle Sch. Dist. 1*, 88 Wn.2d 483, 563 P.2d 199 (1977); *Irwin Concrete, Inc. v. Sun Coast Properties, Inc.*, 33 Wn. App. 190, 200, 653 P.2d 1331 (1982); RAP 2.5(a).

To establish an unlawful entry, the State must introduce evidence the entrant was "not then licensed, invited, or otherwise privileged to so enter or remain." RCW 9A.52-.010(3); *State v. Schneider*, 36 Wn. App. 237, 241, 673 P.2d 200 (1983). In *Schneider*, Mrs. Schneider asserted the State failed to prove she entered her estranged husband's residence unlawfully because the house was community property. The court disagreed and stated that the burglary statute was designed to protect the dweller and thus the question is one of occupancy and not ownership. *Schneider*, at 241. In deciding the entry was unlawful, the court considered several facts, including (1) the defendant did not live in the house at the time of the break–in; (2) the occupant had not given anyone except the neighbor permission to enter, and (3) the method of entry—breaking the door latch—was inconsistent with permissive entry. *Schneider*, at 241. No restraining or pretrial release order was alluded to in that case.

Here, without considering exhibit 3, the evidence shows: (1) Mr. Kilponen entered the house by using a hammer to break a window; (2) he conceded in his testimony there was in effect a restraining order preventing him from going to the family home, and also conceded he requested the sheriff go with him to the family home to get some personal belongings; (3) he concealed his truck before he entered the residence; and (4) his telephone calls to his wife show he was not invited, privileged or licensed to go onto the premises.

Furthermore, contrary to what Mr. Kilponen contends, the pretrial release order had not expired when he entered the home. Exhibit 3 is titled "Order of Pretrial Release" and specifically provides, among other things, that Mr. Kilponen (1) not approach or communicate with Mrs. Kilponen directly or indirectly and (2) "not go to family residence for any purpose unless accompanied by a deputy sheriff." The order does not contain a termination date and had not been terminated at the time he entered his wife's home. It was only Mr. Kilponen's interlineation in the acknowledgment of his understanding of the order that contains a time limitation that states: "Defendant agrees to these conditions until arraignment 11–14–84 at 1:30 p.m." Mr. Kilponen could not change the court's order; thus, the interlineation is without effect and his contention is without merit.

Fourth, Mr. Kilponen contends instruction 5 was erroneous because it did not include all the elements of the crime charged, specifically, the requirement he knowingly made an unlawful entry into his own home. We need not consider this contention as this instruction was proposed by Mr. Kilponen's attorney. A party may not request an instruction and later complain the giving of that instruction was error. *State v. Kincaid,* 103 Wn.2d 304, 314, 692 P.2d 823 (1985); *Lamborn v. Phillips Pac. Chem. Co.,* 89 Wn.2d 701, 575 P.2d 215 (1978); *Ball v. Smith,* 87 Wn.2d 717, 556 P.2d 936 (1976).

Furthermore, RCW 9A.52.020 does not require the State to prove the defendant knew he was acting unlawfully. Intent may be inferred from the facts and circumstances surrounding the commission of the act and from conduct which plainly indicates such intent as a matter of logical probability. *Bergeron,* at 19–20. The intent required in the burglary statute is simply the intent to commit a crime against a person or property inside the burglarized premises. *Bergeron,* at 4. We find no error.

Finally, Mr. Kilponen contends the court erred in giving instruction 15 because it violates due process by creating

confusion, is nondirective and it does not logically follow that because a person enters his own house intentionally he knew the entry to be unlawful. There was no error.

Instruction 15 reads:

A person  knows or acts knowingly or with knowledge when he or she is aware of a fact, facts or circumstances or result described by law as being a crime.

If a person has information which would lead a reasonable person in the same situation to believe that facts exist which are described by law as being a crime, the jury is permitted but not required to find that he or she acted with knowledge.

Acting knowingly or with knowledge also is established if a person acts intentionally.

This instruction is WPIC 10.02, 11 Wash. Prac. 53 (Supp. 1986), recently revised to reflect the holding of *State v. Shipp*, 93 Wn.2d 510, 610 P.2d 1322 (1980). There is nothing in the statutory language nor does the defendant cite any cases showing subjective knowledge on a defendant's part, *i.e.*, that he knew he was entering the premises unlawfully, is an element of first degree burglary. As discussed in the analysis of the previous issue, *Bergeron* defines the intent required by the burglary statute and this intent can be inferred from the defendant's conduct, the facts and circumstances surrounding the commission of the act or acts. Here, the evidence shows Mr. Kilponen broke the window to get in the house, he telephoned his wife prior to entering the house, he concealed his pickup, he believed there was a valid order restraining him from entering the family home, and he subjectively knew that he was entering his own home unlawfully.

■ Jury instructions are sufficient and not erroneous if they permit each party to argue his theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law. *Caruso v. Local 690, Int'l Bhd. of Teamsters*, 107 Wn.2d 524, 529, 730 P.2d 1299 (1987); *Brown v. Spokane Cy. Fire Protec. Dist. 1*, 100 Wn.2d 188, 194, 668 P.2d 571 (1983). The instructions read

as a whole here are proper and sufficient and allowed Mr. Kilponen the opportunity to argue his theory of the case.

Affirmed.

THOMPSON, A.C.J., and MUNSON, J., concur.

Reconsideration denied August 7, 1987.

Review denied by Supreme Court December 2, 1987.