[No. 29592-3-III.    Division Three.    January 31, 2012.]

THE STATE OF WASHINGTON, *Appellant*, v. ELISEO C. SANCHEZ, *Respondent*.

*Gary A. Riesen, Prosecuting Attorney*, and *Roy S. Fore, Deputy*, for appellant.

*Janet G. Gemberling* (of *Janet Gemberling PS*), for respondent.

¶1 KORSMO, J. — The trial court dismissed this residential burglary prosecution on the basis that Eliseo Sanchez's ex-wife permitted him to be in her home despite a court's exclusion order. We conclude that only a judge can alter a court order and that Mr. Sanchez could not reasonably rely on his ex-wife's decision to countermand the court. The order of dismissal is reversed.

## FACTS

¶2 As part of a felony conviction, the Chelan County Superior Court entered a domestic violence no-contact order against Mr. Sanchez on February 9, 2009. Mr. Sanchez signed the order. It prevented him from being within 300 feet of his former wife, Maria Vera-Rodriguez, for a four year period. It also excluded him from her residence and place of work. Mr. Sanchez reportedly moved to Mexico after the order was entered, allegedly in response to other pending charges.

¶3 He returned to the Wenatchee area in late August 2010. Despite her protests that he could not stay with her, Mr. Sanchez insisted on living with Ms. Vera-Rodriguez and two of their children. She relented and he stayed in her residence about one week. The couple engaged in consensual sexual relations during that time.

¶4 On the afternoon of August 28, Mr. Sanchez returned to the house and insisted on sexual relations despite Ms. Vera-Rodriguez's refusal. He pulled her into the bedroom and ripped off her shirt. Over the next three and one-half hours he forced himself on her sexually and prevented her from leaving. The children eventually called 911 to report that their parents were fighting. Three members of the sheriff's office arrived.

¶5 They found the couple in bed; Mr. Sanchez was naked. The deputies ultimately arrested him on outstanding warrants and on suspicion of first degree rape, first degree burglary, unlawful imprisonment, and felony violation of a no-contact order. The prosecutor ultimately filed just two charges: residential burglary with sexual motivation and felony violation of a no-contact order.

¶6 The defense moved to dismiss the burglary count before trial in accordance with *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986). Defense counsel argued that Ms. Vera-Rodriguez's consent to Mr. Sanchez's presence in

her home precluded the State from establishing the "enters or remains unlawfully" element of the burglary statute. The State argued that the court order prevented Ms. Vera-Rodriguez from consenting to Mr. Sanchez's presence in her home.

¶7 The trial court agreed with Mr. Sanchez and ruled that the case was controlled by the decision in *State v. Wilson*, 136 Wn. App. 596, 150 P.3d 144 (2007). The residential burglary charge was dismissed. The State then timely appealed to this court.

## ANALYSIS

¶8 The parties agree that this case turns on Ms. Vera-Rodriguez's ability to consent to Mr. Sanchez's staying at her home but disagree over whether the *Wilson* decision applies. We find *Wilson* easily distinguishable and conclude that it would be against public policy to allow a victim to consent in the face of a contrary court order.

¶9 Appellate courts review *Knapstad* rulings de novo. *State v. Conte*, 159 Wn.2d 797, 803, 154 P.3d 194, *cert. denied*, 552 U.S. 992 (2007). *Knapstad* created a pretrial process, akin to summary judgment motions in civil cases, that allows the trial court to dismiss a criminal case when the agreed upon facts show the prosecution's case is missing an element necessary to prove the charged offense. *Knapstad*, 107 Wn.2d at 356-357. Because the trial court does not find facts, it does not enter findings of fact. *Id.* at 357. This, too, is the practice in summary judgment motions. *Duckworth v. City of Bonney Lake*, 91 Wn.2d 19, 21-22, 586 P.2d 860 (1978).[1]

¶10 A person commits residential burglary when "with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a

---

[1] The trial court entered findings in support of its ruling here. Because the findings were not required, we will not consider them. *Humbert v. Walla Walla County*, 145 Wn. App. 185, 192 n.3, 185 P.3d 660 (2008).

dwelling other than a vehicle." RCW 9A.52.025(1). In turn, the legislature has defined the unlawful entry element:

A person "enters or remains unlawfully" in or upon premises when he is not then licensed, invited, or otherwise privileged to enter or remain.

Former RCW 9A.52.010(3) (2004) (partial).

¶11 Washington has a strong public policy against domestic violence and has enacted chapter 26.50 RCW to protect and empower victims against their abusers. LAWS OF 1992, ch. 111, § 1; *State v. Dejarlais*, 136 Wn.2d 939, 944, 969 P.2d 90 (1998). To that end, our courts have recognized that a protected party cannot waive the provisions of a domestic violence protection order or otherwise consent to contact in the face of a contrary court order. *Dejarlais*, 136 Wn.2d at 943-946. Modifications of a protection order are a matter for the trial court; modifications of the public policy are for the legislature. *Id.* at 945-946.

¶12 Burglary statutes have been applied to prosecute people who burglarize their own property. *State v. Kilponen*, 47 Wn. App. 912, 737 P.2d 1024, *review denied*, 109 Wn.2d 1019 (1987) (husband prosecuted for entering family home in violation of no-contact order); *State v. Schneider*, 36 Wn. App. 237, 673 P.2d 200 (1983) (estranged wife charged in burglary of property she co-owned with her husband who occupied the property). The burglary statutes also have been applied to cases where the accused entered a property in violation of a domestic violence order prohibiting contact with the property's occupier. *E.g.*, *State v. Spencer*, 128 Wn. App. 132, 114 P.3d 1222 (2005); *State v. Stinton*, 121 Wn. App. 569, 89 P.3d 717 (2004); *Kilponen*, 47 Wn. App. 912.

¶13 In *Stinton*, the defendant was charged with residential burglary after he entered his girl friend's residence in violation of a protection order that excluded him from the property. The trial court dismissed the action on a *Knapstad* motion, reasoning that violating the protection order while inside the residence did not constitute a crime against

persons or property. 121 Wn. App. at 571-572. Division Two of this court reversed, holding that violating a protection order could serve as a predicate crime for residential burglary. *Id.* at 571, 576-578.

¶14 It was against this backdrop that Division Two subsequently decided *Wilson.* There the defendant had been subject to a no-contact order that prohibited him from contacting his longtime girl friend but did not expressly prohibit him from being at her residence. Despite the existence of the order, the two subsequently signed a lease for the girl friend's residence and jointly lived there. 136 Wn. App. at 600. A few months later, Wilson found himself locked out of the house after an argument. He returned in the middle of the night and splintered the kitchen door while forcing entry. He assaulted his girl friend and subsequently threatened to kill her with the splintered wood. The police arrived and Wilson was subsequently charged with first degree burglary, assault in violation of a protection order, and harassment. *Id.* at 601. The jury found him guilty on all three counts, but the trial judge set aside the burglary verdict on the basis that Wilson had not unlawfully entered the property. *Id.* at 602. The State appealed.

¶15 In a thoughtful opinion, Division Two affirmed the dismissal of the burglary count. The court started its analysis by stating the "legal issue of first impression" that it was addressing: "whether entry or remaining in a jointly shared residence, from which neither party has been lawfully excluded, is unlawful for purposes of establishing this essential element of burglary." *Id.* at 603-604. The court then reviewed various potential bases for allowing a burglary prosecution under the facts of the case. Throughout its analysis, the court repeatedly[2] noted that the no-contact order had not excluded Wilson from his girl friend's residence, even though the order could have done so. *Id.* at 611. The court distinguished the cases in which a property

---

[2] *Wilson,* 136 Wn. App. at 600, 602-605, 611-612.

owner had been prosecuted for burglarizing his or her own property on the basis that the defendants did not then occupy the premises; the court found no support for charging burglary when the defendant occupied the premises. *Id.* at 606-607. The court also reasoned that merely because the girl friend could not waive or modify the no-contact provision, that fact did not make his presence in their home unlawful. *Id.* at 608.

¶16 The court also reviewed its earlier decision in *Stinton*. Because the defendant in *Stinton* had conceded his presence was unlawful and he had been prohibited from being in the residence, the *Wilson* court concluded that *Stinton* did not apply. Reviewing the special laws governing domestic violence, the court also reasoned that there was no clear legislative intent to apply the burglary statute to that fact pattern. *Id.* at 611-612. In sum, because *Wilson* fell outside the factual circumstances of the earlier cases that had permitted burglary prosecutions, the court affirmed the trial court's decision to set aside the verdict.

■ ¶17 The facts of this case are not those of *Wilson*. The critical factor here, as recognized throughout *Wilson*, is that the no-contact order prohibited Mr. Sanchez from being in his ex-wife's residence. He also had no ownership or possessory right to that property. His only basis for claiming a right to be present stems from his ex-wife's consent to his presence. That simply is not a basis for overriding a court order. *Dejarlais*, 136 Wn.2d at 943-946. We hold that the consent of a protected person cannot override a court order excluding a person from the residence. *Accord People v. Lewis*, 13 A.D.3d 208, 786 N.Y.S.2d 494, 497-498 (2004), *aff'd*, 5 N.Y. 3d 546, 840 N.E.2d 1014, 807 N.Y.S.2d 1 (2005).

¶18 This holding is entirely consistent with *Wilson*, an opinion with which we are in agreement. We simply read *Wilson* to mean that a general no-contact order is insufficient to exclude a person from his own residence merely because the protected person is present, even if the protected person also resides there. If a protection order is to

exclude a person from the victim's residence, it must so state. That was not done in *Wilson*, but it was done here.

¶19 Our holding is also consistent with the purposes of our domestic violence protection laws. It removes any incentive an abuser may have to pressure the protected person to consent to his presence in violation of the order. *See Lewis*, 786 N.Y.S.2d at 498. The power to modify a no-contact order remains with the court that issued it.

¶20 Mr. Sanchez on appeal, as he did in the trial court, places great stock in language from the *Wilson* court's discussion of the different purposes of the burglary and no-contact order statutes:

> Although the purpose of a no-contact order is to prevent the victim from having to face her batterer, the burglary statute's intent is to allow an occupant to prevent all those who are unwelcome from entering the premises. *It is the consent, or lack of consent, of the residence possessor, not the State's or court's consent or lack of consent, that drives the burglary statute's definition of a person who "is not then licensed, invited, or otherwise privileged to so enter or remain" in a building.*

*Wilson*, 136 Wn. App. at 608-609 (emphasis added). This observation, contrary to Mr. Sanchez's argument, does not control this case. The *Wilson* court was not addressing the situation where a court's exclusion order was at issue, nor was it even addressing the situation where a court's authority conflicted with a property owner's authority. It was simply stating the obvious—in the typical situation, whether one is lawfully on the property is dependent upon the will of the person who possesses the property. Nothing in this passage supports the theory that the property possessor can trump an order of the court or that a court has no say in who can lawfully be on property. Indeed, *Wilson* acknowledged that the no-contact order could have excluded Mr. Wilson from the premises. *Id*. at 611. The *Wilson* court also recognized that the girl friend had no authority to consent to Mr. Wilson's being in their home. *Id*.

at 608. To accept Mr. Sanchez's construction of *Wilson* would create internal conflicts within that opinion.

¶21 *Wilson* did not involve a conflict between a court order and the right of a property possessor to control who may visit the premises. Its discussion of consent authority does not control this case, just as it did not control the result there. *Wilson* provides no support for Mr. Sanchez.

¶22 The superior court in 2009 had authority to exclude Mr. Sanchez from the residence of his former wife. It did so. Mr. Sanchez knew that he had been excluded. The fact that he pressured Ms. Vera-Rodriguez to allow him to stay on the premises did not make his presence there lawful. Her consent did not change the court's order.

¶23 The order of dismissal is reversed and the case is remanded with directions to reinstate the charge of residential burglary with sexual motivation.

KULIK, C.J., and SWEENEY, J., concur.