IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| STATE OF WASHINGTON | No. 68019-6-I |
| Respondent, | |
| v. | DIVISION ONE |
| JERDALE NECOY JACKSON, | UNPUBLISHED OPINION |
| Appellant. | FILED: March 11, 2013 |

LEACH, C.J. — Jerdale Jackson appeals his conviction for felony violation of a domestic violence no-contact order. He argues that the police violated his privacy rights under the state and federal constitutions when they searched the apartment he shared with his girl friend, Michelle Valdez. Additionally, he contends that the court violated his confrontation clause rights by admitting an unredacted copy of the order. Because the no-contact order prohibited Jackson from contacting Valdez and restrained him from visiting her home, Jackson's presence at the apartment was unlawful and he lacks standing to challenge the search. Because the order was not testimonial in nature, the evidence does not implicate the confrontation clause. We affirm.

Background

On March 30, 2011, Federal Way police officers responded to a 911 report of domestic violence at Michelle Valdez's apartment. They spoke with the complainant, Valdez's 16-year-old son, D.V., outside the apartment. He reported

that his stepfather, whom he called J-Ride, hit him with an extension cord wrapped around his fist. D.V. described J-Ride as a thin black male wearing a white do-rag and sweatpants. Officer Benjamin Tseng saw a transient mark on D.V.'s leg. He believed that the incident was probably lawful parental corporal punishment rather than abuse, but he went to the apartment to speak with D.V.'s parents about the report. D.V. told officers that both his mother and his stepfather were at home.

Valdez answered the apartment door. When Tseng asked if he could come in to talk about D.V., she stepped aside and opened the door to allow him to enter. She jokingly asked what D.V. had done to get in trouble. Tseng stated that he needed to speak with both her and her husband. Valdez stated that she was not married. Tseng asked if her boyfriend, or if anyone named J-Ride, was home. Valdez became evasive and noncommittal and attempted to physically block the hallway leading to the rest of her apartment.

Valdez's abrupt change in behavior, along with D.V.'s initial report that both his parents were home, made Tseng suspicious that someone might be hiding in the apartment. He conducted a protective sweep of the apartment. As Tseng walked through the hallway, he saw Jerdale Jackson standing inside a bedroom. Jackson matched D.V.'s description of the suspect. Tseng discovered an outstanding warrant for Jackson's arrest and a Colorado no-contact order restraining him from contact with Valdez. When confronted with the information about the no-contact order, Jackson responded, "Colorado can't tell me who I

can be with or not, neither can Washington, you record that and put that as my statement." Tseng placed Jackson under arrest. Valdez did not give a statement but told the officers that Jackson had been living in the apartment for a month.

The State charged Jackson with domestic violence felony violation of a court order and domestic violence assault. It dismissed the assault charge after D.V. recanted. The case proceeded to trial on only the no-contact order violation. The trial court denied Jackson's motion to suppress evidence, finding that he did not have standing to challenge the warrantless search of Valdez's apartment. The court ruled in the alternative that the police had a basis for conducting a warrantless "protective sweep" after Valdez became uncooperative. A jury convicted Jackson as charged, and the court imposed a standard range sentence. Jackson appeals.

## Standard of Review

We review the denial of a motion to suppress evidence by determining whether substantial evidence supports the trial court's findings of fact and whether those findings support the trial court's conclusions of law.[1] Substantial evidence exists if it is sufficient to persuade a fair-minded, rational person of the truth of the matter asserted.[2] We review conclusions of law de novo.[3]

---

[1] State v. Ross, 106 Wn. App 876, 880, 26 P.3d 298 (2001).
[2] State v. Levy, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006).
[3] State v. Acrey, 148 Wn.2d 738, 745, 64 P.3d 594 (2003).

Analysis

Jackson alleges that the police conducted an unlawful warrantless search of the apartment, violating his rights under the Fourth Amendment to the United States Constitution. Jackson also argues that the court erred by refusing to suppress evidence acquired through the illegal search of the apartment he shared with Valdez. The State counters that Jackson had no legal right to be in the apartment and therefore no reasonable expectation of privacy there. We agree that the Colorado no-contact order prohibited Jackson's presence at the apartment, and therefore he lacks standing to challenge the search.

The Fourth Amendment states, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." To qualify for Fourth Amendment protection, a criminal defendant must show that he has standing to challenge the claimed invasion of privacy.[4] Standing to challenge a warrantless search "'depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.'"[5] To determine whether a person has standing, we apply a two-part test: (1) does the defendant have a subjective expectation of privacy and (2) is society willing to recognize that expectation as reasonable?[6]

---

[4] State v. Jacobs, 101 Wn. App. 80, 87, 2 P.3d 974 (2000).
[5] Jacobs, 101 Wn. App. at 87 (quoting Rakas v. Illinois, 439 U.S. 128, 143, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978)).
[6] Jacobs, 101 Wn. App. at 87 (quoting California v. Ciraolo, 476 U.S. 207, 211, 106 S. Ct. 1809, 90 L. Ed. 2d 210 (1986)).

Jackson relies on State v. Wilson.[7] The State charged Wilson with first degree burglary and assault after he broke down the door to the apartment that he shared with his girl friend, pulled her hair, and threatened to kill her with a piece of broken wood.[8] A no-contact order prohibited Wilson from contacting her in person, by telephone, or by intermediary, but it did not exclude him from her home.[9] The court found that "although the acts Wilson committed inside the residence were unlawful, his acts of entering and remaining inside were not themselves unlawful because the no-contact order did not exclude him from the residence he shared with [his girl friend]."[10]

State v. Jacobs,[11] however, is more on point. In Jacobs, we noted that an expectation of privacy is not reasonable if the defendant's presence at the scene of the search is illegal. A domestic violence no-contact order restrained Jacobs from having any contact with the victim. Despite testimony that Jacobs kept an overnight bag at the house and stayed there regularly, the court decided that his violation of the court order made his presence there illegal and he lacked standing to challenge the legality of the search.[12]

Our courts have held that "[i]f a protection order is to exclude a person from the victim's residence, it must so state."[13] Here, as in both Jacobs and

---

[7] 136 Wn. App. 596, 604, 150 P.3d 144 (2007).
[8] Wilson, 136 Wn. App. at 601.
[9] Wilson, 136 Wn. App. at 600.
[10] Wilson, 136 Wn. App. at 604.
[11] 101 Wn. App. 80, 87, 2 P.3d 974 (2000).
[12] Jacobs, 101 Wn. App. at 88.
[13] State v. Sanchez, 166 Wn. App. 304, 310-11, 271 P.3d 264 (2012).

Wilson, the order's specificity is critical to determining whether the defendant's expectation of privacy was "reasonable." Contrary to Jackson's assertion, the no-contact order excluded him from Valdez's residence. In addition to prohibiting Jackson from direct or indirect communication with Valdez, the order also required him to "vacate the home of the victim(s), stay away from the home of the victim(s), and stay away from any other location the victim(s) is/are likely to be found." While the order may not have listed any specific address that Jackson could not visit, the language is substantially broader than the order in Wilson and clearly directs that Jackson stay away from Valdez's residence.

Jackson also argues that even if he lacks standing under the Fourth Amendment, he has standing to challenge the search under article I, section 7 of the Washington Constitution. That provision of the Washington Constitution provides, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." The parties dispute whether the trial court should have applied a Gunwall[14] analysis to determine whether the state or federal constitution provides greater protection to Jackson, and Jackson contends that the court erred by refusing to analyze the case under the state constitutional provisions. Even assuming that the Gunwall analysis was unnecessary here, our courts have determined that article I, section 7 only protects "those privacy interests which citizens of this state have held, and

---

[14] State v. Gunwall, 106 Wn.2d 54, 720 P.2d 808 (1986).

should be entitled to hold, safe from governmental trespass absent a warrant."[15]

However, Jackson's standing argument is still based on his apparent misapprehention that the no-contact order did not exclude him from Valdez's house. He cites numerous cases that discuss Washington's heightened respect for the privacy of one's house but provides no support for his claim to an enforceable privacy right in Valdez's home, despite a valid court order barring him from that location.

Jackson also challenges two of the court's findings of fact that supported its conclusion that the search was reasonable. We review challenged findings to determine whether substantial evidence supports the findings and whether the findings in turn support the court's conclusions of law.[16] Challenged finding 1.e states, "At this point the officers had two purposes in being at the residence: (1) to make the parents aware of [D.V.]'s 911 call and (2) to discuss the situation with the parents and confirm this was discipline and not a crime." Finding 1.g states, "Officer Tseng explained what happened with [D.V.] and Ms. Valdez denied that an assault occurred. Officer Tseng again asked if there was an adult male there. Ms. Valdez continued to refuse to provide a definite answer. Ms. Valdez proceeded to somewhat block the hallway." Officer Tseng's unrebutted testimony supports both of these findings. Thus, the court's findings were supported by substantial evidence and support its legal conclusion.

---

[15] State v. Myrick, 102 Wn.2d 506, 511, 688 P.2d 151 (1984).
[16] State v. Garvin, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009).

Jackson next contends that the court improperly admitted testimonial hearsay, in violation of the Sixth Amendment's confrontation clause and the parallel provision of article 1, section 22 of the Washington Constitution. The trial court admitted a copy of the Colorado no-contact order. On the signature line, someone had written, "Refused." The court refused to redact this and found that the notation was not hearsay. Apart from the court's failure to redact the refusal, Jackson does not argue that the court improperly admitted the order.

The confrontation clause bars the admission of "testimonial" hearsay unless the declarant is unavailable to testify and the defendant had a prior opportunity for cross-examination.[17] Although Washington courts have not adopted any comprehensive list of what qualifies as a testimonial statement, the courts have found that statements made "in anticipation of litigation" are testimonial in nature.[18] Certified records that are not prepared for use in a criminal trial are not testimonial.[19] Because the no-contact order was not prepared in anticipation of litigation, it is not testimonial, and Jackson's confrontation clause challenge fails.

## Conclusion

Because the no-contact order prohibited Jackson from being present at Valdez's residence, he had no expectation of privacy in her apartment and lacks

---

[17] Crawford v. Washington, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

[18] State v. Hubbard, 169 Wn. App. 182, 185-86, 279 P.3d 521 (2012).

[19] State v. Jasper, 174 Wn.2d 96, 112, 271 P.3d 876 (2012).

standing to challenge the search. Because the order did not contain testimonial hearsay, the court did not infringe on Jackson's confrontation rights by refusing to redact the document. We affirm.

_Leach, C. J._

WE CONCUR: