# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

LATOUSHA RANEE YOUNG,

Appellant.

No. 74537-9-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: April 24, 2017

LEACH, J. — A jury convicted Latousha Young of first degree burglary and violation of a no-contact order after she broke into her mother's home and assaulted her partner. Young appeals her burglary conviction. She challenges the sufficiency of the evidence to prove that she unlawfully entered or remained in the home. She also claims the trial court commented on the evidence with its instruction on unlawful entry. The State presented enough evidence to persuade a reasonable juror that Young did not have permission to enter or remain in the home and that she entered in violation of a no-contact order. And the trial court's instruction to the jury did not misstate the law or resolve any factual questions. So we affirm Young's burglary conviction.

## FACTS

In August 2015, Bothell Municipal Court entered a postconviction domestic violence no-contact order, prohibiting Young from having contact with her partner,

Alexis Stewart. Specifically, the order barred Young from coming within 1,000 feet of Stewart's residence, school, workplace, or person.

On October 4, 2015, Stewart had been living in the home of Young's mother, Janice Young, for about a month.[1] Stewart and her young child slept in the bedroom of Janice's partner's 12-year-old daughter.

About 1:00 a.m. on October 4, Janice awoke to a loud bang. She went to investigate. She saw Young break a window next to the front door and enter the home. Young went upstairs to the bedroom where Stewart was staying. Janice testified that she told Young not to do "this" and warned her that she would call the police. Janice claims she grabbed Young to prevent her from getting into the room but then let her go so she could call 911.

Young jumped on Stewart and began hitting her. Janice called 911, and Young fled outside and hid in the bushes in the backyard where the police found and arrested her.

The State charged Young with first degree burglary and violation of a no-contact order.[2] After the State presented its evidence, the defense moved the court to dismiss the burglary charge, asserting that no rational trier of fact could find that Young unlawfully entered or remained on the premises. The court denied the motion. It found Janice's testimony about Young not having permission to

---

[1] To avoid confusion, we refer to Janice Young by her first name.
[2] The State also charged Young with third degree assault, alleging that she assaulted a law enforcement officer, but this charge was not tried in this proceeding.

break through the window sufficient to raise a question of fact as to whether Young had permission to enter the home.

The jury convicted Young of both charges. She appeals her burglary conviction.

## DISCUSSION

### Dismissal of Burglary Conviction

First, Young claims that the State's evidence is insufficient as a matter of law to prove an essential element of first degree burglary.

In reviewing a challenge to the sufficiency of the evidence, we determine whether a rational trier of fact could find the elements of the crime beyond a reasonable doubt.[3] We view all facts and draw reasonable inferences in the light most favorable to the State.[4]

To prove first degree burglary, the State must show that Young entered or remained unlawfully in a building with the intent to commit a crime, and while in the building or in immediate flight therefrom, she or another participant in the crime was armed with a deadly weapon or assaulted any person.[5] Young contends that the State has not shown she entered or remained unlawfully on the property. We disagree.

---

[3] State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).
[4] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).
[5] RCW 9A.52.020(1).

"A person 'enters or remains unlawfully' in or upon premises when he or she is not then licensed, invited, or otherwise privileged to so enter or remain."[6] In addition, a court order can serve as the basis for the unlawful entry element.[7] Here, the State introduced evidence that Young did not have permission to enter the premises and that she entered in violation of a no-contact order. A rational trier of fact could find her entry was unlawful for either reason.

Young claims her entry was not unlawful because Janice gave her permission to enter. Janice testified that Young was welcome to visit her home and frequently did. But she also said that Young did not have permission to break through the window. In addition, Janice restrained Young from entering the bedroom and called the police. From these facts, a jury could rationally conclude that she did not have permission either to enter the home or to remain at that time.

Even if Young had Janice's permission, her entry was unlawful because it violated a no-contact order. Young asserts that despite the court order, Janice's permission gave her license to enter the premises. An individual's permission cannot override a court order.[8]

Young likens this case to State v. Wilson.[9] In that case, the jury convicted Wilson of burglary when he assaulted his girlfriend in their jointly shared residence in violation of a court order.[10] The trial court properly dismissed the burglary

---

[6] Former RCW 9A.52.010(5) (2011).

[7] State v. Sanchez, 166 Wn. App. 304, 310, 271 P.3d 264 (2012); State v. Kilponen, 47 Wn. App. 912, 919, 737 P.2d 1024 (1987).

[8] Sanchez, 166 Wn. App. at 311.

[9] 136 Wn. App. 596, 150 P.3d 144 (2007).

[10] Wilson, 136 Wn. App. at 602.

conviction because, although Wilson's conduct inside the home was unlawful, his act of entering and remaining inside the residence was not unlawful because the order did not exclude him from the residence.[11] We distinguish this case from Wilson because the protective order expressly bars Young from coming within 1,000 feet of Stewart's residence or person. Thus, unlike Wilson, the no-contact order contained express provisions that made Young's entry unlawful.

Young contends that she did not enter the home in violation of the no-contact order because Stewart was a guest, not a resident, at Janice's home. We disagree that as a matter of law, Janice's home was not Stewart's residence. Before October 4, Stewart had been living at Janice's home for a month. The record contains no evidence that Stewart lived anywhere else during this month. Two days after the assault, Stewart signed a lease on a new apartment. A jury could conclude Janice's home was Stewart's residence when the assault occurred.

A jury could also conclude that when she entered the home she violated the no-contact order by coming within 1,000 feet of Stewart's person. Drawing all reasonable inferences in favor of the State, the description of the home indicates that when Young entered the house, she was within 1,000 feet of Stewart.

In sum, the State provided evidence that Young did not have permission to enter the premises and that Young violated a no-contact order when she broke into the home. Either is sufficient for the jury to find unlawful entry. Sufficient evidence supports the unlawful entry element of the burglary charge.

---

[11] Wilson, 136 Wn. App. at 604-05.

## Jury instruction

Next, Young claims the court improperly instructed the jury. We review alleged errors in jury instruction de novo.[12]

Young challenges the following instruction:

> A person enters or remains unlawfully in or upon premises when he or she is not then licensed, invited, or otherwise privileged to so enter or remain.
> A person who is prohibited by court order from entering a premise[s] cannot be licensed, invited, or otherwise privileged to so enter or remain on the premise[s] by an occupant of the premise[s].

Young contends that this instruction misstates the law and is an improper judicial comment on the evidence. We disagree.

The Washington Constitution forbids judges from commenting on the evidence presented at trial.[13] A jury instruction that essentially resolves a contested factual issue is an improper comment on the evidence.[14] A jury instruction that does no more than accurately state the law about an issue, however, is not a comment on the evidence by the trial judge.[15]

Young first contends that the court's instruction inaccurately states the law because it is broader than the court's holding in State v. Sanchez.[16] Sanchez states "that the consent of a protected person cannot override a court order excluding a person from the residence."[17] But Young incorrectly asserts that

---

[12] State v. Woods, 143 Wn.2d 561, 590, 23 P.3d 1046 (2001).
[13] WASH. CONST. art. IV, § 16; Woods, 143 Wn.2d at 590-91.
[14] State v. Brush, 183 Wn.2d 550, 557, 353 P.3d 213 (2015).
[15] Woods, 143 Wn.2d at 591.
[16] 166 Wn. App. 304, 271 P.3d 264 (2012).
[17] Sanchez, 166 Wn. App. at 310.

Sanchez limited its holding to the consent of protected persons. Sanchez repeatedly suggests that the true issue is whether a conflict exists between a court order and a property possessor and held that "only a judge can alter a court order."[18] The trial court properly interpreted Sanchez's holding about a possessor of the premises to mean that an occupant cannot override a court order.

Young also contends that the instruction improperly resolves an important factual issue. "[L]egal definitions should not be fashioned out of courts' findings regarding legal sufficiency."[19] Young asserts that the instruction prevented the jury from considering whether and to what extent the house was Stewart's residence and, thus, whether the court order barred Young from entering the home. But the instruction did not define premises or state that the court order barred Young's entry. The instructions left these questions to the jury to decide.

Because the instruction accurately stated the law and did not resolve any factual issues, the trial court did not improperly instruct the jury.

<u>Statement of Additional Grounds</u>

Young also filed a statement of additional grounds for review. Young's first additional ground simply restates certain facts of the case and appears to address the question of Stewart's residence. We have already resolved this issue and need not discuss it further.

---

[18] Sanchez, 166 Wn. App. at 305, 311-12.
[19] Brush, 183 Wn.2d at 558.

Young's second additional ground claims that the trial court's decision to address a separate judicial issue related to a civil complaint that Young had filed prejudiced her criminal case. Young does not identify this civil complaint or explain how she was prejudiced. Her citation to the record does not reference any other proceeding. Young's third additional ground appears to dispute the testimony of an arresting officer and criticize actions of the police but does not identify any reviewable error. Because these grounds do not inform the court of the "nature and occurrence of alleged errors" and relate to matters outside the record, we do not consider them.[20]

### Legal Financial Obligations

Next, Young challenges for the first time on appeal the court's decision to impose $600 in legal financial obligations (LFOs). "Unpreserved LFO errors do not command review as a matter of right."[21] However, RAP 2.5(a) grants the court discretion to consider a claim of error raised for the first time in the appellate court. We exercise our discretion to consider the issue presented and affirm the trial court's award of costs.

The trial court imposed a $100 deoxyribonucleic acid (DNA) testing fee and a $500 victim penalty assessment. Both the DNA fee and victim penalty

---

[20] RAP 10.10(c).
[21] State v. Blazina, 182 Wn.2d 827, 833, 334 P.3d 680 (2015).

assessment are mandatory.[22] We have repeatedly held that a trial court must impose mandatory LFOs without considering the defendant's ability to pay.[23]

Young asserts that the plain language of RCW 10.01.160(3) requires the court to consider ability to pay for both discretionary and mandatory fees. The statute provides,

> The court shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.[24]

But we have previously held that "unlike discretionary legal financial obligations, the legislature unequivocally requires imposition of the mandatory DNA fee and the mandatory victim penalty assessment at sentencing without regard to finding the ability to pay."[25]

Young also claims that imposing mandatory LFOs on indigent defendants violates substantive due process and that to allow mandatory fees to be waived for civil litigants, but not for criminal defendants, violates equal protection.[26]

---

[22] RCW 7.68.035(1)(a) (victim assessment); RCW 43.43.7541 (DNA testing fee); State v. Kuster, 175 Wn. App. 420, 424, 306 P.3d 1022 (2013); State v. Lundy, 176 Wn. App. 96, 103, 308 P.3d 755 (2013).

[23] State v. Shelton, 194 Wn. App. 660, 674-75, 378 P.3d 230 (2016), review denied, 187 Wn.2d 1002 (2017); Lundy, 176 Wn. App. at 102.

[24] RCW 10.01.160(3).

[25] Shelton, 194 Wn. App. at 674-75.

[26] See GR 34(a); Jafar v. Webb, 177 Wn.2d 520, 523, 303 P.3d 1042 (2013).

Division Two considered and rejected these same arguments in State v. Mathers.[27] We follow Mathers and affirm the LFOs imposed.

### Appellate Costs

Finally, Young asks the court to deny the State appellate costs based on her indigency. We generally award appellate costs to the substantially prevailing party on review. However, when a trial court makes a finding of indigency, that finding continues throughout review "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency."[28] Here, the trial court found Young was indigent. If the State has evidence indicating significant improvement in Young's financial circumstances since the trial court's finding, it may file a motion for costs with the commissioner.

### CONCLUSION

We affirm.

_Leach, J._

WE CONCUR:

---

[27] 193 Wn. App. 913, 924-29, 376 P.3d 1163, review denied, 186 Wn.2d 1015 (2016).
[28] RAP 14.2.