IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34232-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GERRIT JON KOBES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Gerrit Kobes appeals his convictions for residential burglary and violation of a no contact order, arguing that the location was not the victim's residence since she was away for a week at the time of the crimes. We affirm.

FACTS

Mr. Kobes was granted a four day furlough from the Stevens County Jail to attend his grandmother's funeral. His father drove him to Mr. Kobes' wife's house at 1365 Kettle Park Road in Kettle Falls in order to obtain his wallet and boots. At that time, a no contact order prohibited Mr. Kobes from coming within 100 yards of her "residence." That order also provided that law enforcement would provide a "civil standby" if Mr.

Kobes needed to recover personal property from the address of 1365 Kettle Park Road. However, Mr. Kobes also knew that Erica Kobes had checked into a Spokane treatment facility for a week and was not present. Instead, her mother was in the house watching the children during her absence.

Kobes retrieved his items from the house. When Mrs. Kobes discovered that Mr. Kobes has been there, she reported the incident to law enforcement. The prosecutor ultimately filed a felony charge of residential burglary as well as a gross misdemeanor count of violation of a no contact order.

The defense argued that the Kettle Falls address was not a protected "residence" since Erica Kobes was "residing" in a treatment center in Spokane at the time. Nonetheless, the jury convicted Mr. Kobes on the two counts as charged. He promptly appealed to this court.

## ANALYSIS

Mr. Kobes argues that the term "residence" used in the no contact order is vague under the facts of this case, thus rendering the evidence insufficient to support the convictions. We turn to the "residence" contention before briefly discussing the sufficiency of the evidence.

To resolve a contention that a court order is vague, courts will treat the order as if it were a statute and apply standard rules of statutory construction. *State v. Bahl*, 164 Wn.2d 739, 753-754, 193 P.3d 678 (2008). The test of vagueness is whether an *ordinary*

2

*person* would understand the meaning of the statute. *State v. Halstien*, 122 Wn.2d 109, 117, 857 P.2d 270 (1993). It is the burden of the challenger to establish that the statute is vague. *Id.* at 118. When a term is undefined, courts can turn to a dictionary to provide the plain and ordinary meaning of the language in question. *Bahl*, 164 Wn.2d at 754. In addressing an "as applied" challenge, such as that raised here, the question is whether "the statute as applied to the particular facts of the case and the party's conduct" is so indefinite as to fail to "provide ascertainable standards of guilt to protect against arbitrary enforcement." *State v. Peterson*, 174 Wn. App. 828, 845, 301 P.3d 1060 (2013).

We do not believe an ordinary person would believe that someone leaving her home for a week, leaving her children there with her mother as babysitter, and leaving her possessions behind, would think that the residence has been abandoned. Temporary domicile for a brief, fixed period has never been commonly understood as a change of residence.

Appellant notes that the term "residence" has been defined in varying different ways depending on the statutory context, and relies on the definition used in a sex offender registration case, *State v. Jenkins*, 100 Wn. App. 85, 995 P.2d 1268 (2000). *Jenkins* adopted the following definition found in an earlier case, *State v. Pickett*, 95 Wn. App. 475, 478, 975 P.2d 584 (1999):

> "Residence as the term is commonly understood is the place where a person lives as either a temporary or permanent dwelling, a place to which one

3

intends to return, as distinguished from a place of temporary sojourn or transient visit."

*Jenkins*, 100 Wn. App. at 91 (quoting *Pickett*, 95 Wn. App. at 478). We agree that this is an appropriate definition to apply here. But we disagree that this definition helps Mr. Kobes.[1]

His argument essentially relies on the first half of the definition by emphasizing that a temporary dwelling can be a permanent residence. However, the second half is critical to understanding the whole definition. In addition to being a temporary dwelling, the location must be a place to which the person *intends to return* and distinguishable from "'a place of temporary sojourn or transient visit.'"[2] *Id.*

Here, Mr. Kobes knew that his wife intended to return to her home. The children continued to reside in the house and their personal property (such as his wallet) was maintained there. She had arranged for a live-in caregiver during her absence. In short, he knew that her absence was temporary and that she intended to return to the family home. In contrast, there is no evidence supporting a belief that Ms. Kobes intended to

---

[1] In *Jenkins*, the key issue was defining the words "residence address." The word "residence" served as an adjective describing the key word, "address." Here, the word "residence" is a noun carrying a somewhat different meaning than the adjective at issue in *Jenkins*.

[2] Washington law generally recognizes that residence, once established, is presumed to continue until the person claiming a change in residence establishes that fact. *E.g.*, *State v. Burns*, 59 Wn.2d 197, 200, 367 P.2d 119 (1961); *Fiske v. Fiske*, 48 Wn.2d 69, 72, 290 P.2d 725 (1955).

4

return to the Spokane facility after her week of treatment was complete. It may have been a temporary dwelling, but it was not a temporary residence.

Accordingly, a person of reasonable intelligence would not believe that Ms. Kobes no longer maintained the Kettle Falls address as her residence. The word "residence" was not vague under the facts of this case.

That determination simplifies the remaining issue. A person commits the crime of residential burglary when he enters or remains unlawfully in a dwelling with the intent to commit a crime therein. RCW 9A.52.025(1). Entry is unlawful when made in violation of a court order, even when the violator acts with the permission of the protected person. *State v. Sanchez*, 166 Wn. App. 304, 307-312, 271 P.3d 264 (2012).

Appellate courts review sufficiency of the evidence challenges to see if there was evidence from which the trier of fact could find each element of the offense proved beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-222, 616 P.2d 628 (1980) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). The reviewing court will consider the evidence in a light most favorable to the prosecution. *Id.* It also must defer to the finder of fact in resolving conflicting evidence and credibility determinations. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

The only contested element in this appeal is the "unlawful entry" aspect of the crime. That argument is predicated on both the theory that the house was no longer Erica

5

Kobes' residence while she was in Spokane for the week and that her mother allowed Mr. Kobes into the house. The "residence" discussion earlier is dispositive of these arguments. The no contact order excluded Mr. Kobes from the Kettle Falls house because it was Erica Kobes' residence. Neither Erica Kobes nor her mother could grant Mr. Kobes permission to enter the house. *Sanchez*, 166 Wn. App. at 310. Only a court could alter that order. *Id.* at 310-311.

Accordingly, the evidence supported the unlawful entry element of the crime. The evidence therefore supported the jury verdict and was sufficient.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Lawrence-Berrey, J.

6