**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

STATE OF WASHINGTON,

          Respondent,

        v.

JOSHUA TERELL FRANCIS,

          Appellant.

No. 86987-6-I

DIVISION ONE

UNPUBLISHED OPINION

MANN, J. — Joshua Francis[1] appeals his convictions for violation of a no-contact order/domestic violence and residential burglary/domestic violence. He argues that the trial court erred when it found him guilty on both counts due to insufficient evidence in the police reports relied on to support the convictions. We affirm.

I

On August 27, 2020, deputies were dispatched to a domestic disturbance in Thurston County, Washington. Upon arrival, they learned that Francis had destroyed two phones that belonged to his mother, Susan Francis,[2] valued at $35 dollars each.

---

[1] We note that appellant's middle name is spelled differently throughout the record.

[2] For clarity, we refer to appellant's mother by her first name. No disrespect is intended.

Susan successfully requested a no-contact order against Francis that was issued on August 28, 2020.

On November 8, 2021, while on routine patrol, Thurston County Sheriff's Deputy Kyle Peters observed a wrong-way driver heading directly toward him. He activated his emergency lights and stopped the vehicle. The driver, later identified as Susan, explained she was driving on the wrong side of the road because she was unfamiliar with the area and was being followed by another vehicle. Upon further questioning, Susan explained that she was being followed by the mother of a female at her house that her son, Francis, had brought over, and that the two were doing drugs and refused to leave.

Deputy Peters immediately recognized the name of Joshua Francis, as he had investigated Francis in prior violations involving Susan. Dispatch advised Deputy Peters that there was an active protection order between Susan and Francis. Since Susan alleged that Francis was at her house, Deputy Peters successfully requested confirmation of the protection order from dispatch and had several other deputies head to Susan's house.

Susan declined to provide a recorded statement confirming Francis's presence at her house, but she disclosed that he had been living at her house "in violation of the order since he got shot over a year ago." Deputy Peters then headed toward Susan's house.

Upon approaching the residence, Deputy Peters observed a figure walk out of the front door of the house and through the yard. After further inspection along the south side of the residence, Deputy Peters saw an open door in a shop located directly

next to Susan's house, and a man he recognized as the same figure he had seen earlier, sitting just inside the open door. Deputy Peters could see a black male that matched the description of Francis based on Francis's Department of Licensing photo and a prior booking photo. Deputy Peters called out to Francis, "Joshua, Sheriff's Office, [s]how me your hands!" to which Francis reacted by giving him a "deer in the headlights look." Francis lifted his hands and complied with Deputy Peter's command to get on his stomach, at which point he was arrested.

Francis was charged with violation of a no-contact order/domestic violence, residential burglary/domestic violence, malicious mischief in the third degree/domestic violence, and hit and run attended vehicle.[3] Francis entered a drug court program in relation to the charges.

The drug court contract specified that in the event Francis was terminated from the program, he agreed and stipulated that

> the Court will determine the issue of guilt on the pending charge(s) solely upon the law enforcement/investigative agency reports or declarations, witness statements, field test results, lab test results, or other expert testing or examinations such as fingerprint or handwriting comparisons, which constitute the basis for the prosecution of the pending charge(s).

Francis further stipulated "that the facts presented by such reports, declarations, statements, and/or expert examinations are sufficient for the Court to find him[] guilty of the pending charge(s)."

While in the program, Francis had employment issues and incurred violations based on a missed urinalysis and a group session. Consequently, the trial court

---

[3] Francis does not raise any assignments of error related to the offenses of malicious mischief in the third degree/domestic violence and hit and run attended vehicle, thus we do not address them.

entered Francis into a "Last Chance" contract, which required strict compliance with the drug court program's requirements. Upon stipulation of further violations by Francis, the trial court ordered his termination from the drug court program and set the matter for a stipulated facts bench trial, held on June 18, 2024.

At the stipulated facts bench trial, the trial court found Francis guilty as charged on all four counts. The police reports the trial court considered in reaching its decision were attached to its findings of fact and conclusions of law, as per the drug court contract. Francis appeals.

II

Francis argues there was insufficient evidence in the police reports to convict him of the offense of violation of a no-contact order/domestic violence.

A

"In a stipulated facts trial, the judge or jury still determines the defendant's guilt or innocence [and] the State must prove beyond a reasonable doubt the defendant's guilt." State v. Johnson, 104 Wn.2d 338, 342, 705 P.2d 773 (1985). A defendant's "stipulation to the sufficiency of evidence [is] not binding on either the trial court or the Court of Appeals." State v. Drum, 168 Wn.2d 23, 34, 225 P.3d 237 (2010).

In State v. Roberts, ___ Wn.3d ___, 572 P.3d 1191 (2025), the Washington Supreme Court clarified that the test for sufficiency of evidence in bench trials is the one set out by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 318-19, 61 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). The inquiry is "whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could

-4-

have found guilt beyond a reasonable doubt." Roberts, 572 P.3d at 1195 (citing Jackson, 443 U.S. at 318-19).

A claim of insufficient evidence admits the truth of the State's evidence and all reasonable inferences drawn therefrom. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992); State v. O'Neal, 159 Wn.2d 500, 505, 150 P.3d 1121 (2007). All inferences are drawn in favor of the State. Roberts, 572 P.3d at 1200.

B

At the outset, it is important to clarify that at the stipulated facts bench trial, the trial court based its decisions on the police reports submitted by the parties rather than on the stipulation of the sufficiency of the evidence by Francis found in the drug court contract. The trial court found Francis guilty of violation of a no-contact order/domestic violence. His defense counsel offered no argument regarding the trial court's findings of fact or its conclusions of law.

In his police report, Deputy Peters stated that after stopping Susan for driving the wrong way, she told him that Francis was at her house with a female he had brought over, that both were doing drugs, and that they refused to leave. Deputy Peters was familiar with Francis, having investigated him for prior violations involving Susan, and dispatch confirmed the existence of an active no-contact order between the two. The report also indicated that Susan disclosed to Deputy Peters that Francis had been living "at [her] home in violation of the [protection] order since he got shot, over a year ago." This was admitted by Francis in his brief. Further, after being taken into custody, Francis "began making comments that he will be returning to the home once he gets released from jail, knowing that he will once again be in violation of the order." Lastly,

-5-

the reason Susan's address does not appear in the police reports is because it was redacted, as noted by Francis himself.

Based on the above, and drawing all reasonable inferences in favor of the State, there was sufficient evidence in the police reports such that any rational trier of fact could have found that (1) there was an active no contact order between Susan and Francis at the time of the incident; (2) the no-contact order prohibited Francis from being in Susan's residence; and (3) Francis was in violation of the no-contact order by being present at Susan's residence. Thus, the trial court did not err in finding Francis guilty of violation of a no contact order/domestic violence.

C

Francis further argues there was insufficient evidence in the police reports to convict him of the offense of residential burglary/domestic violence. Francis asserts that "[l]iving in [Susan's] house [in violation of the no-contact order] for over a year is evidence of consensual entry and undercuts a finding of unlawful entry." We disagree.

RCW 9A.52.025(1) states that "[a] person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle."

As explained above, there was substantial evidence in the police reports such that any reasonable trier of fact could have found that Francis was present at Susan's residence in violation of the no-contact order. In addition, given the broad interpretation of "intent to commit a crime therein" by Washington courts, a violation of a protection order can serve as a predicate crime for residential burglary. State v. Stinton, 121 Wn. App. 569, 576, 89 P.3d 717 (2004). Lastly, even if Francis's admission about living in

Susan's home for over a year in violation of the no-contact order was evidence of consensual entry, this is immaterial given that "consent of a protected person cannot override a court order excluding a person from the residence." State v. Sanchez, 166 Wn. App. 304, 310, 271 P.3d 264 (2012).

Based on the above, and drawing all reasonable inferences in favor of the State, there was sufficient evidence in the police reports such that any reasonable trier of fact could have found that Francis entered or remained in Susan's dwelling with the intent to commit the crime of violation of a no-contact order/domestic violence. Thus, the trial court did not err in finding Francis guilty of residential burglary/domestic violence.

In conclusion, Francis cannot establish insufficiency of evidence regarding both the convictions of violation of a no-contact order/domestic violence and residential burglary/domestic violence.

We affirm.

Mann, J.

WE CONCUR:

Feldman, J.

Coburn, J.